Case No. 23-5170

IN THE

# United States Court of Appeals
# for the Sixth Circuit

MCKEE FOODS CORPORATION,
*Plaintiff-Appellant,*

—v.—

BFP, INC. d/b/a THRIFTY MED PLUS PHARMACY,
*Defendant-Appellee,*

—v.—

*STATE OF TENNESSEE,*
*Intervenor-Appellee.*

On Appeal from the United States District Court
Eastern District of Tennessee, Chattanooga Division
Case No. 1:21-cv-00279 (The Honorable Charles E. Atchley, Jr.)

## BRIEF OF PLAINTIFF-APPELLANT

WILLIAM H. PICKERING
CATHERINE S. DORVIL
CHAMBLISS, BAHNER & STOPHEL, P.C.
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450
(423) 756-3000

MARK E. SCHMIDTKE
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
56 S. Washington Street, Suite 302
Valparaiso, IN 46383
(219) 242-8666

*Counsel for the Plaintiff-Appellant McKee Foods Corporation*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**DISCLOSURE OF CORPORATE AFFILIATIONS
AND FINANCIAL INTEREST**

| Sixth Circuit<br>Case Number:   23-5170 | Case<br>Name: | McKee Foods Corporation v. BFP, Inc. d/b/a<br>Thrifty Med Plus Pharmacy v. State of<br>Tennessee |
|---|---|---|

Name of counsel:   William H. Pickering

Pursuant to Sixth Circuit Rule 26.1, Plaintiff-Appellant, McKee Foods
Corporation, makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If
    Yes, list below the identity of the parent corporation or affiliate and the
    relationship between it and the named party:

    **No.**

2.  Is there a publicly owned corporation, not a party to the appeal, that has a
    financial interest in the outcome?  If yes, list the identity of such corporation
    and the nature of the financial interest:

    **No.**


Disclosure and certification made this 24th day of May, 2023.

<u>s/William H. Pickering</u>
Counsel for McKee Foods Corporation

i

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS  AND FINANCIAL INTEREST ..................................................................................... i

TABLE OF AUTHORITIES ...........................................................v

STATEMENT IN SUPPORT OF ORAL ARGUMENT ...................................... ix

STATEMENT OF JURISDICTION...............................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................3

STATEMENT OF THE CASE ..........................................................................5

I.    Introduction...............................................................................5

II.   Relevant Facts and Procedural History .......................................7

    A.    McKee Health Plan; Thrifty Med's Removal ......................................7

    B.    Thrifty Med's Multiple Requests for Reinstatement ............................8

    C.    Enactment of Tenn. Code Ann. § 56-7-3120; Thrifty Med's Lobbying in Support .......................................................................11

    D.    Thrifty Med's Additional Requests for Reinstatement; Administrative Complaints with Department of Commerce and Insurance ................14

    E.    McKee's Declaratory Judgment Action...............................................15

    F.    Thrifty Med's Allegations and Admissions in this Litigation ............16

    G.    Thrifty Med's Efforts to Secure Passage of Public Chapter 1070 ......17

    H.    Thrifty Med's Motion to Dismiss........................................................19

    I.    Proceedings on Motion to Dismiss .....................................................22

    J.    Appeal.................................................................................................24

SUMMARY OF ARGUMENT ...................................................................25

ARGUMENT ............................................................................................28

THE DISTRICT COURT ERRED IN GRANTING THRIFTY MED'S MOTION TO DISMISS. .............................................................................................28

    A.    Standard of Review .............................................................................28

    B.    The District Court Incorrectly Concluded that There Was No Reasonable Expectation that Thrifty Med Would Pursue Reinstatement to the McKee Pharmacy Network. ..............................29

1.    The District Court acknowledged that the burden was on Thrifty Med to establish mootness but effectively shifted the burden to McKee...................................................................29

      a.    Thrifty Med bore a high burden of proof because it voluntarily changed its litigation position to support a claim of mootness. ...........................................................30

      b.    The District Court effectively shifted Thrifty Med's burden to McKee. ...........................................................33

2.    The District Court, erroneously, gave substantial weight to Thrifty Med's counsel's statement that Thrifty Med had no current intent or plan to seek reinstatement under Public Chapter 1070. .............................................................34

3.    The District Court gave undue weight to the closure of Thrifty Med's administrative complaints while minimizing or disregarding other material evidence of Thrifty Med's pre- and post-litigation conduct and assertions.......................................37

      a.    Thrifty Med's extensive efforts to secure the passage of Public Chapter 1070 created a reasonable inference that Thrifty Med would rely on the legislation when passed............................................................................38

      b.    The closure of Thrifty Med's administrative complaints did not end the dispute between the parties....................39

      c.    Declaratory relief was warranted because the Tennessee any willing pharmacy laws conflicted with McKee's rights under its ERISA plan.  Neither Thrifty Med nor the State stipulated that it would not enforce the laws against McKee.............................................................................41

4.    The District Court failed to consider relevant facts, circumstances and documentary evidence demonstrating that there *was* a reasonable expectation that Thrifty Med would pursue reinstatement to the McKee network. ...........................44

      a.    Thrifty Med's reservation of its rights to seek reinstatement to the McKee network creates a reasonable expectation that Thrifty Med will exercise that right.....45

      b.    Reinstatement to the McKee network would provide Thrifty Med with major financial gain. ..........................47

c.    McKee's evidence was significant and not speculative. TCI/TKR Cable does not support Thrifty Med's position or the District Court's holding.........................................47

C.    Public Chapter 1070's Amendments to the Statutes at Issue in this Litigation Did Not Make the Case Moot..............................................50

CONCLUSION........................................................................................53

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................................54

CERTIFICATE OF SERVICE ...............................................................55

ADDENDUM : PLAINTIFF-APPELLANT'S DESIGNATION OF RELEVANT DOCUMENTS.......................................................................56

STATUTORY ADDENDUM .................................................................58

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adams v. Bowater, Inc.*,
  313 F.3d 611 (1st Cir. 2002) ........................................................ 45, 46

*Adarand Constuctors, Inc. v. Slater*,
  528 U.S. 216 (2000) ........................................................................33

*Blackwell v. City of Inkster*,
  596 F.Supp.3d 906 (E.D. Mich. 2022) ...........................................31

*Bldg. & Const. Dep't v. Rockwell Int'l Corp.*,
  7 F.3d 1487 (10th Cir. 1993) ..........................................................28

*Cam I, Inc. v. Louisville/Jefferson Cnty. Metro Gov't*,
  460 F.3d 717 (6th Cir. 2006) ..........................................................51

*Carrier Corp. v. Outokumpu Oyj*,
  673 F.3d 430 (6th Cir. 2012) ..........................................................38

*Cartwright v. Garner*,
  751 F.3d 752 (6th Cir. 2014) ..........................................................28

*CIGNA Healthplan of Louisiana, Inc. v. State of La. ex rel. Ieyoub*,
  82 F.3d 642 (5th Cir. 1996) ............................................................41

*City of Mesquite v. Aladdin's Castle, Inc.*,
  455 U.S. 283 (1982) ........................................................................32

*Community Health Partners, Inc. v. Com. of Ky.*,
  14 F. Supp. 2d 991 (W.D. Ky. 1998) ..............................................41

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ........................................................................31

*Health Maint. Org. Ass'n of Kentucky v. Nichols,* No. CIV.A. 97-24, 1998 WL
  34103663, at *2 (E.D. Ky. Aug. 6, 1998), .................................. 43, 44

*In re Arnold & Baker Farms*,
    85 F.3d 1415 (9th Cir.1996) ................................................................ 28

*Kentucky Assoc. of Health Plans v. Nichols*,
    227 F.3d 352 (6th Cir. 2000) ........................................................... 7, 43

*Kita v. Comm'r of Social Sec.*,
    No. 1:08–cv–446, 2009 WL 1464252 (W.D. Mich. May 18, 2009) .................. 36

*Knox v. Serv. Emps. Int'l Union, Loc.,1000*,
    567 U.S. 298 (2012) ................................................................... 31, 32

*Los Angeles Cty. v. Davis*,
    440 U.S. 625 (1979) ........................................................................ 31

*MacDonald v. General Motors Corp*,
    110 F.3d 337 (6th Cir. 1997) ............................................................. 36

*Memphis A. Philip Randolph Inst. v. Hargett*,
    2 F.4th 548 (6th Cir. 2021) ............................................................... 33

*Mobil Oil Corp. v. Att'y Gen. of Com. of Va.*,
    940 F.2d 73 (4th Cir. 1991) ...................................................... 28, 42, 43

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995) ......................................................................... 7

*Northeast Fla. Chapter of Associated Gen. Contractors of Am. v. City of
    Jacksonville, Fla.*, 508 U.S. 656 (1993),
        508 U.S. 656 (1993) ................................................................... 32

*Speech First, Inc. v. Schlissel*,
    939 F.3d 756 (6th Cir. 2019) ............................................................. 31

*Stewart v. Blackwell*,
    444 F.3d 843 (6th Cir. 2006) ............................................................. 31

*Tapco Prod. Co. v. Van Mark Prod. Corp.*,
    446 F.2d 420 (6th Cir. 1971) ............................................................. 36

*TCI/TKR Cable v. Johnson*,
    30 Fed. App'x. 581 (6th Cir. 2002) ............................................ 48, 49, 50

*United States v. Generix Drug Corp.*,
  460 U.S. 453 (1983) ......................................................................49

*Virginia v. Am. Booksellers Ass'n, Inc.*,
  484 U.S. 383, 108 S. Ct. 636, 98 L. Ed. 2d 782 .................................43

*Youngstown Publ'g Co. v. McKelvey*,
  189 F. App'x 402 (6th Cir. 2006) ....................................................31

Statutes

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 1331 ..........................................................................1, 17

28 U.S.C. § 1367(a) .........................................................................16

28 U.S.C. §§ 2201-2202 ....................................................................1

29 U.S.C. § 1001 ...........................................................................5, 7

29 U.S.C. § 1054(g) .........................................................................45

29 U.S.C. § 1132(e) ...........................................................................1

Tenn. Code Ann. § 56-7-3120 ................................................. passim

Tenn. Code Ann. § 56-7-3121 .........................................................52

Tenn. Code Ann. § 56-7-2359 ................................................. passim

Tenn. Code Ann. § 56-7-3102(1)................................................ 12, 19

Pub. Ch. 569 (H.B. 1398/S.B. 2458) ........................................ passim

Pub. Ch. 1070 (H.B. 2661) ...................................................... passim

H.B. 2949 .................................................................................. 11, 56

S.B. 528 ...........................................................................................56

Rules

Fed. R. App. P. 3 ...............................................................................1

Fed. R. App. P. 32(a)(5).....................................................................54

Fed. R. App. P. 32(a)(6).....................................................................54

Fed. R. App. P. 32(f) ................................................................54

Fed. R. App. P 32(a)(7)(B) .....................................................54

Fed. R. App. P. 4(a)(1)(A) .........................................................1

Fed. R. App. P. 12(b)(1) ............................................. 28, 31, 42

Fed. R. App. P. 26(f) ...............................................................29

Sixth Circuit Rule 26.1 ............................................................. i

Sixth Circuit Rule 30(g) ..........................................................56

Sixth Circuit Rule 32(b)(1) ......................................................54

Other Authorities

13B Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 3533.5 (3d ed.)
............................................................................................45

Tenn. Comm. Dept. Bulletin 21-01 (Jul.8, 2021) ...................16

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

Plaintiff-Appellant McKee Foods Corporation ("McKee") respectfully requests oral argument. The District Court's decision and McKee's appeal present important legal issues, including the applicable standards, burden of proof and evidence to be considered in a declaratory judgment action when one party expresses a present intent to pause its dispute against the other while reserving the right to pursue its previous course of action. The case presents the related issue of whether the requirement of a "case or controversy" is satisfied – regardless of the action or inaction by the opposing party – when challenged state law would require an employer to alter its administration of an ERISA plan or risk violating the statutes the employer says are preempted. Oral argument will assist the Court in addressing the legal issues presented by this case and in considering the applicability of the law to the factual and documentary evidence presented. The opportunity to question counsel regarding these matters will likewise be beneficial to the Court and will enable the parties to address the issues further.

## STATEMENT OF JURISDICTION

**A.** **Subject Matter Jurisdiction of the United States District Court:**

Subject matter jurisdiction in this case was vested in the United States

District Court for the Eastern District of Tennessee upon the filing of McKee's

Complaint pursuant to 28 U.S.C. § 1331; the Federal Declaratory Judgments Act,

28 U.S.C. §§ 2201-2202; and ERISA, 29 U.S.C. § 1132(e).  The Complaint was

filed November 15, 2021.  Complaint, R. 1, PageID # 1.  The Answer of Defendant-

Appellee BFP, Inc. d/b/a Thrifty Med Plus Pharmacy ("Thrifty Med") admitted that

the District Court had jurisdiction.  Answer, R. 2, PageID # 62.  As discussed

herein, Thrifty Med subsequently disputed the District Court's jurisdiction.  Motion

to Dismiss, R. 37, PageID # 325.

**B.** **Subject Matter Jurisdiction of the United States Court of Appeals:**

Appellate jurisdiction in this cause was vested in this Court upon the filing of

McKee's Notice of Appeal on March 1, 2023, by virtue of 28 U.S.C. § 1291 and

Fed. R. App. P. 3.

**C.** **Timeliness of the Appeal:**

The District Court granted Thrifty Med's Motion to Dismiss this action on

February 3, 2023.  Memorandum Opinion and Order, R. 67, PageID # 794.

Pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A), McKee timely filed its

Notice of Appeal on March 1, 2023.  Notice of Appeal, R. 68, PageID # 803.

**D.**    **Appeal Assertion:**

This appeal is from a final judgment of the District Court, which disposed of all claims with respect to all parties.

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

The issue presented by this appeal is whether the District Court erred in granting Defendant Thrifty Med Pharmacy's Motion to Dismiss Plaintiff McKee Foods Corporation's Complaint for declaratory and injunctive relief for lack of subject matter jurisdiction.  The principal question is whether the District Court erred in concluding that there was no reasonable expectation that Defendant Thrifty Med would continue its quest for reinstatement to the McKee pharmacy network under amendments to Tennessee's "any willing pharmacy" statutes contained in Tennessee Public Chapter 1070 (2022).

Additional questions which will inform this Court's decision include:

1.      Whether Thrifty Med sustained its high burden of demonstrating that there was no reasonable expectation that it would seek reinstatement under the amendments.

2.      Whether the District Court erred in minimizing the significance of Thrifty Med's reservation of its right to seek reinstatement under Public Chapter 1070, while giving substantial weight to unsworn statements of Thrifty Med's counsel that Thrifty Med had no *current* plan to seek reinstatement.

3.      Whether the District Court erred in giving undue weight to the closure of administrative complaints previously filed by Thrifty Med while minimizing or disregarding other material evidence of the likelihood that Thrifty Med would seek reinstatement under Public Chapter 1070.

3

4.     Whether the District Court failed to consider other relevant facts, circumstances and documentary evidence demonstrating that there was a reasonable expectation that Thrifty Med would pursue reinstatement to the McKee network.

5.     Whether Public Chapter 1070's amendments to the "any willing pharmacy" statutes at issue in this case (Tenn. Code Ann. §§ 56-7-2359 and 56-7-3120) materially and substantially altered the rights and obligations of the parties so as to remove the harm to McKee and thereby moot the underlying dispute.

## STATEMENT OF THE CASE

### I.    Introduction

In 2019, McKee Foods Corporation, sponsor, administrator and fiduciary of the McKee Foods Corporation Employees Health and Supplemental Benefits Program, initiated the removal of Thrifty Med Pharmacy from the health plan's pharmacy network.  Thrifty Med actively sought reinstatement to the network during the three years which followed.  Relying on "any willing pharmacy" statutes codified at Tenn. Code Ann. §§ 56-7-2359 and 56-7-3120, Thrifty Med alleged – in communications with McKee and its pharmacy benefit manager, in administrative complaints filed with the Tennessee Department of Commerce and Insurance, and in filings in the case below – that McKee was illegally excluding Thrifty Med from the network.

Faced with these allegations, McKee filed this action for declaratory and injunctive relief in November 2021 requesting, among other things, a declaration that Tenn. Code Ann. §§ 56-7-2359 and 56-7-3120 are preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA").  The State of Tennessee intervened in the case in defense of the statutes and was a party to the proceedings below.

After this action was filed, Thrifty Med lobbied for the passage of legislative amendments which Thrifty Med believed would clarify the current state laws and strengthen its position against McKee.  The amendments added one subsection to

Tenn. Code Ann. § 56-7-3120 and purported to make that statute and others not at issue in this litigation specifically applicable to ERISA plans. The amendments passed in late April 2022 with an effective date of January 1, 2023. 2022 Tennessee Laws Pub. Ch. 1070 (H.B. 2661), Sections 3, 5, 12.

Thrifty Med promptly filed a Motion to Dismiss this case for lack of subject matter jurisdiction and alternatively moved for summary judgment on the issue of ERISA preemption.[1] Thrifty Med argued that McKee's action was moot because the law was being amended and Thrifty Med was willing to stipulate that it would not seek reinstatement under the current version of the law. Thrifty Med stated that it "remained to be seen" whether Thrifty Med would pursue reinstatement after the 2022 amendments became effective at the beginning of 2023.

McKee opposed Thrifty Med's Motion to Dismiss, citing facts, documents and case authority in support of McKee's position that its action for declaratory and injunctive relief was not moot. The District Court, however, granted Thrifty Med's Motion to Dismiss for lack of subject matter jurisdiction. Memorandum Opinion and Order, R. 67, PageID # 802.[2] McKee's timely appeal followed. McKee

---

[1] Motion to Dismiss or, in the Alternative, for Summary Judgment ("Motion to Dismiss"), R. 37.

[2] Other pending motions referenced in the District Court's Memorandum Opinion and Order (*Id.*, PageID # 794), including the parties' cross motions for summary judgment on ERISA preemption, were denied as moot and are not at issue in this appeal.

respectfully submits that the District Court disregarded material facts and
misapplied the law and that its order granting Thrifty Med's Motion to Dismiss
should be reversed.

## II.    Relevant Facts and Procedural History

### A.    McKee Health Plan; Thrifty Med's Removal

McKee is the sponsor, administrator and fiduciary of the McKee Foods
Corporation Employees Health and Supplemental Benefits Program ("McKee
Health Plan").  Declaration of Angela Sharps ("First Sharps Dec."), R. 35-2,
PageID # 191 (¶ 4) and Ex. A (Plan Document), PageID ## 197, 199, 203, 225, 230.
The health plan is completely self-funded and governed by the Employee
Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq.
("ERISA").  *Id*., PageID # 191 (¶ 4) and Ex. A, PageID # 230 (Type of Plan and
Source of Funding).  Among other benefits, the McKee Health Plan offers
prescription drug benefits to several thousand eligible employees and their eligible
dependents located in multiple jurisdictions throughout the United States.  *Id*.,
PageID # 191 (¶ 5) and Ex. A, Attachment B (Prescription Drug Program), PageID
## 233-251.[3]

---

[3] An important purpose of ERISA preemption is to ensure that plans and plan
sponsors are subject to a uniform body of benefits law and do not have the burden
of complying with conflicting directives imposed by the different states where they
do business. *Kentucky Assoc. of Health Plans v. Nichols,* 227 F.3d 352, 358 (6th
Cir. 2000) (citing *New York State Conf. of Blue Cross & Blue Shield Plans v.
Travelers Ins. Co*., 514 U.S. 645, 656–57 (1995)).

A pharmacy benefit manager ("PBM"), MedImpact Healthcare Systems, Inc. ("MedImpact"), provides prescription drug administrative services to participants in the McKee Health Plan.  *Id.*, PageID ## 191-192 (¶¶ 6-7).  McKee and the PBM jointly determine which pharmacies are included in the McKee Health Plan network and likewise determine if pharmacies should be removed.  *Id.*, PageID ## 191-192 (¶ 6).

At one time, Thrifty Med was in the McKee Health Plan's pharmacy network.  In 2018, however, after McKee received a complaint from a Plan participant who had prescriptions filled at Thrifty Med, an audit was conducted of Thrifty Med's prescription practices.  *Id.*, PageID # 192 (¶¶ 8-9). The results of the audit led McKee to conclude that Thrifty Med had engaged in improprieties in processing prescriptions and had overcharged the Health Plan and its participants. *Id.*, PageID # 192 (¶ 9).  By letter dated June 3, 2019, MedImpact notified Thrifty Med that it was being removed from the McKee Health Plan's pharmacy network, effective July 1, 2019.  *Id.*, PageID ## 192-193 (¶ 10) and Ex. B (Notice of Network Termination), PageID # 253.

### B.    Thrifty Med's Multiple Requests for Reinstatement

Thrifty Med protested its removal from the McKee Health Plan's pharmacy network and over the next three years – both before and after McKee initiated this action for declaratory and injunctive relief – asserted its position that it should be reinstated to the network.  Thrifty Med's owners, Greg and Julie Bohannon,

requested and were granted meetings with McKee and its counsel to make their

requests for reinstatement in person.  Angela Sharps and Shawn Pellington, McKee

managers with responsibility for compensation and employee benefits,[4] met with

the Bohannons at their request on June 14, 2019.  Second Sharps Dec., R. 45-1,

PageID # 436 (¶ 8).  While emphasizing that cause for Thrifty Med's removal from

the pharmacy network was not required, Mr. Pellington and Ms. Sharps advised the

Bohannons of key aspects of the audit results which had been communicated to

McKee, including Thrifty Med's overbilling for prescriptions, improperly signing

employees' names to prescription logs, and altering prescription copies and labels

submitted as part of Thrifty Med's appeal of the audit findings.  *Id.*, PageID ## 435-

436 (¶¶ 5-6, 9).  Mr. and Mrs. Bohannon did not respond to McKee's statements

regarding these concerns and others.  *Id.*, PageID # 436 (¶ 9).

    As part of its ongoing reinstatement effort, Thrifty Med sought to influence

and obtain the support of McKee's employees.  During 2019, Thrifty Med solicited

employee signatures on petitions asking McKee to include Thrifty Med in the

McKee Health Plan's pharmacy network.  *Id.*, PageID ## 436-437 (¶ 10).  Thrifty

Med subsequently put up three large billboard messages along the route many

---

[4] Ms. Sharps was McKee's Compensation and Benefits Manager at the time.
Second Declaration of Angela Sharps, R. 45-1 ("Second Sharps Dec."), PageID #
434 (¶ 2).  Mr. Pellington held the position of Senior Manager, Total Rewards, and
was Ms. Sharps' immediate supervisor.  Second Sharps Dec., R. 45-1, PageID #
436 (¶ 8).

McKee employees take to and from work.  Declaration of Kevin Spicer ("Spicer Dec."), R. 45-2, PageID ## 443 (¶¶ 10-11) and 444-451 (Exs. A-D).  The billboards describe Thrifty Med as "THE PHARMACY YOU DESERVE."  *Id.*, PageID # 445, 449, 451 (Exs. A, C and D).  The billboard messages and accompanying images remained posted throughout the proceedings below.  *Id.*, PageID # 443 (¶ 9); Thrifty Med's Response to McKee's First Requests for Admission, R. 53-1, PageID # 559 (¶ 29).

Thrifty Med continued its efforts to obtain reinstatement to the McKee network during 2020.  Thrifty Med's counsel, Russell Gray, requested a meeting with McKee's counsel, William Pickering.  The meeting occurred on March 20, 2020, when Mr. Gray delivered a letter to Mr. Pickering asserting, among other things, that Tennessee's Any Willing Pharmacy Statute, Tenn. Code Ann. § 56-7-2359(a)(1), prohibited McKee from denying any licensed pharmacy the right to participate in its health plan.  Letter from Russell W. Gray dated March 20, 2020, R. 45-3, at PageID # 455.  Mr. Gray's letter further asserted that the removal of Thrifty Med from the McKee Health Plan's pharmacy network constituted a "wrongful termination" that was "dramatically affecting [Thrifty Med's] business."  *Id*.  Mr. Gray confirmed that Thrifty Med wanted to be reinstated to McKee's pharmacy network and stated that, should McKee be unwilling to resolve the dispute, Thrifty

Med was "prepared to pursue any and all available remedies to protect its rights."

*Id.*, PageID #456.[5]

Thrifty Med requested an additional meeting with McKee and its counsel,

which occurred on June 15, 2020.  Second Sharps Dec., R. 45-1, PageID # 437 (¶

11).  This meeting was attended by Mr. and Mrs. Bohannon, Mr. Gray, Ms. Sharps,

and Catherine Dorvil (co-counsel for McKee).  *Id.*  Mr. and Mrs. Bohannon

reiterated Thrifty Med's requests for reinstatement to the McKee Health Plan's

pharmacy network but, in McKee's view, did not provide acceptable explanations

for the facts and concerns which had been communicated to them and their counsel.

*Id.*

### C.    Enactment of Tenn. Code Ann. § 56-7-3120; Thrifty Med's Lobbying in Support

The original "any willing pharmacy" statute referenced in Mr. Gray's

correspondence – Tenn. Code Ann. § 56-7-2359 – was passed in 1998 and amended

in 2001.[6]  In 2021, at the behest of the pharmacy lobby, legislation which became

Public Chapter 569[7] was introduced in an attempt to impose additional restrictions

---

[5] Anticipating litigation, Mr. Gray reiterated a previous request "that McKee Foods and the McKee Foods Plan preserve any materials relating to this termination under a legal hold."  *Id.*, PageID # 455.

[6]*See* 1998 Tenn. Laws Pub. Ch. 1033 (H.B. 2949), Section 9; 2001 Tenn. Laws Pub. Ch. 236 (SB 528).

[7] *See* Statutory Addendum to this Brief.

on the rights of PBMs and "covered entities," previously defined to include self-insured entities,[8] to determine which pharmacies were included in their plan networks.  The legislation as proposed would prevent a PBM or covered entity from interfering with a patient's right to choose a contracted pharmacy in a manner that violated Tenn. Code Ann. § 56-7-2359 (the existing any willing pharmacy statute) or by other means.  This prohibition was eventually codified at Tenn. Code Ann. § 56-7-3120 which provides in part:

> A pharmacy benefits manager or a covered entity shall not interfere with a patient's right to choose a contracted pharmacy or contracted provider of choice in a manner that violates § 56-7-2359 or by other means, including inducement, steering, or offering financial or other incentives.

Tenn. Code Ann. § 56-7-3120(b).

Documents produced in discovery show that Thrifty Med was a strong supporter of the proposed legislation which became Public Chapter 569 and Tenn. Code Ann. § 56-7-3120.  Thrifty Med's co-owner, Julie Bohannon, sent emails to all members of the Senate Commerce & Labor Committee and the House Insurance Subcommittee urging passage of the legislation.  *See* Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Supplemental Brief"), Ex. 1, R. 62-1, PageID ## 652-664.  During April and May of 2021, Ms. Bohannon became concerned about potential amendments to the legislation "interjecting ERISA plan exclusions" and urged legislators to reject any such amendments.  In an

---

[8] *See* Tenn. Code Ann. § 56-7-3102(1).

12

email to Representative Esther Helton dated April 29, 2021, Ms. Bohannon

referenced Thrifty Med's ongoing dispute with McKee and offered to testify during

the House committee hearings to "[give] real testimony of a personal attack by a

PBM colluding with a large local employer . . ." *Id.*, PageID # 667.  On May 4,

2021, Ms. Bohannon sent an email to a number of state senators, strongly urging

them to reconsider their stance on the legislation and stating that the "bill needs to

pass with NO omissions of ERISA plans." *Id.*, PageID # 709 (emphasis in

original).  At about the same time, Greg Bohannon texted Tennessee House Speaker

Cameron Sexton, specifically noting Thrifty Med's controversy with McKee and

the issue of ERISA preemption and thanking the Speaker for his support of the

pending legislation.  *Id.*, PageID # 717.

Public Chapter 569 was passed by the Tennessee Legislature with no specific

exemption for ERISA plans and was approved by Governor Bill Lee on

May 26, 2021.  Most of the bill, including the section codified as Tenn. Code Ann.

§ 56-7-3120, became effective July 1, 2021.  2021 Tennessee Laws Pub. Ch. 569

(H.B. 1398), Section 6.

A few days after Public Chapter 569 became effective, the Tennessee

Department of Commerce and Insurance announced its intent to apply the law to

ERISA plans.  In its Bulletin 21-01, the Department stated that the "covered

entities" to which the law would apply "includes 'self-insured entities,' which

would include ERISA plans" and that "[n]o exclusions in the PBM laws are carved

13

out to exclude plans currently regulated by ERISA." The bulletin went on to state that "[t]he Department will enforce Pub. Ch. 569 accordingly." Tenn. Comm. Dept. Bulletin 21-01 (Jul. 8, 2021), R. 36-4, PageID ## 299-300.

**D.    Thrifty Med's Additional Requests for Reinstatement; Administrative Complaints with Department of Commerce and Insurance**

Thrifty Med sought to take advantage of Public Chapter 569 shortly after it became effective in July of 2021, to support Thrifty Med's effort to be reinstated to the McKee pharmacy network. On July 16, 2021, citing Tenn. Code Ann. § 56-7-3120(b), Thrifty Med made a formal request to McKee's PBM, MedImpact, for reinstatement to the McKee Health Plan's pharmacy network. Plaintiff's Supplemental Brief, Ex. 1 (Pharmacy Reinstatement Request), R. 62-1, PageID # 668.[9] When that request was denied, Thrifty Med took its demands for reinstatement to the Tennessee Department of Commerce and Insurance by filing three administrative complaints alleging that McKee was in violation of the "any willing provider" law (Tenn. Code Ann. § 56-7-2359) and Public Chapter 569.

---

[9] *See also* Declaration and Stipulation of Thrifty Med ("Thrifty Med Dec.") filed in support of Thrifty Med's Motion to Dismiss, wherein Thrifty Med acknowledged that it "sought reinstatement as an in-network pharmacy in McKee's Prescription Drug Program" after learning of the passage of Public Chapter 569. Thrifty Med Dec., R. 38-2, PageID # 349 (¶ 4.)

14

Declaration of Jennifer Johnson, R. 35-1, Exs. A-C, PageID ## 178-189.[10]  Thrifty

Med's administrative complaints accused McKee of unlawful conduct and asked

that McKee's "closed network" and allegedly illegal practices "be eliminated

immediately."  *Id.*, PageID ## 180, 184, 188.

MedImpact filed responses to Thrifty Med's complaints stating, among other

things, that the statutes relied upon by Thrifty Med did not apply to self-funded

ERISA plans.  Plaintiff's Supplemental Brief, Ex. 1, R. 62-1, ## 701-705

(MedImpact Response to Complaint No. 71356).  Agreeing with MedImpact, the

Department dismissed Complaint No. 71356, stating that it had "no jurisdiction

pertaining to a self-funded/self-insured benefit plan" governed by ERISA.

Declaration and Stipulation of Thrifty Med Plus Pharmacy, R. 38-2, Ex. A, PageID

## 351-352.  Addressing Thrifty Med's other two administrative complaints (Nos.

71028 and 71428), the Department stated that its mediation efforts had been

exhausted and that the Department was therefore closing its files.  *Id.*, PageID ##

353-355.

### E.    McKee's Declaratory Judgment Action

McKee filed its Complaint for Declaratory Judgment and Injunctive Relief on

November 15, 2021, asserting among other things that the Tennessee laws at issue

---

[10] Thrifty Med's administrative complaints referred to House Bill 1398 which
became Public Chapter 596 and included the section of the law at issue, Tenn. Code
Ann. § 56-7-3120.  *Id.*, PageID ## 179-180, 183-184, 187.

15

in this case are preempted by ERISA.  Complaint, R. 1, PageID ## 1-39.  McKee's complaint referenced Thrifty Med's continuing disagreement with and objections to its removal from the McKee Health Plan's pharmacy network, Thrifty Med's assertions to McKee's PBM that Public Chapter 569 and Tenn. Code Ann. § 56-7-2359 required McKee and the PBM to reinstate Thrifty Med to the network, and the administrative complaints alleging that Thrifty Med's exclusion from the network violated the two Tennessee statutes.  *Id*., PageID ## 6-7.

### F.    Thrifty Med's Allegations and Admissions in this Litigation

Thrifty Med continued to assert entitlement to reinstatement in this litigation. In its Answer to McKee's complaint, Thrifty Med asserted that it was removed without cause from the McKee pharmacy network and that it sought reinstatement "because its exclusion contravenes Tenn. Code Ann. § 56-7-3120."  Answer, R. 12, PageID # 60.  Thrifty Med similarly denied that McKee could exclude Thrifty Med from the McKee network and expressly asserted "its right to seek inclusion in pharmacy networks pursuant to Tennessee state law."  *Id*., PageID # 66 (¶ 40). Thrifty Med admitted that an actual controversy existed regarding McKee's refusal to include Thrifty Med in the pharmacy network and that the District Court had jurisdiction over the action.  *Id.*, PageID ## 62, 64-65 (¶¶ 10, 32).[11]  The District

---

[11] Thrifty Med's only qualification to its acknowledgement of the District Court's jurisdiction was a reservation of the right to challenge *supplemental jurisdiction* under 28 U.S.C. § 1367(a) (for example, if the District Court were to dismiss the federal claims governed by ERISA).  *Id.*, PageID # 62 (¶ 10).

16

Court's Scheduling Order confirmed the parties' agreement that subject matter jurisdiction under 28 U.S.C. § 1331 was not in dispute.  Scheduling Order, R. 17, PageID # 82 (¶ 2).

### G.    Thrifty Med's Efforts to Secure Passage of Public Chapter 1070

Unsuccessful in its efforts to obtain reinstatement to the McKee network under Public Chapter 569, Thrifty Med began a months-long campaign, in coordination with state and national pharmacy organizations, to get the law changed.  In November 2021, Greg Bohannon requested assistance from Representative Helton and complained about the Department's responses to Thrifty Med's complaints.  *See* text messages attached to Plaintiff's Supplemental Brief in Opposition to Thrifty Med's Motion to Dismiss, R. 62-1, PageID ## 714-715, 716. Rep. Helton responded that there had been a meeting with lobbyists and the Tennessee Pharmacy Association ("TPA") and that amendments to the law would be proposed to "give authority to commerce and insurance to deal with the PBMs and hold their feet to the fire."  *Id*., PageID # 715.

Much of Thrifty Med's communication with the Legislature occurred after McKee's declaratory judgment action was filed and was related to Thrifty Med's dissatisfaction with the Department's handling of Thrifty Med's complaints against McKee.  During March of 2022, Julie Bohannon sent numerous detailed emails to

legislators, including Speaker Sexton and Lt. Gov. Randy McNally, noting her first-hand experience and urging passage of HB2661/SB2458 (which became Public Chapter 1070).  *Id.,* PageID ## 671-698.[12]  Thrifty Med and the TPA referred to the law as a "clean-up bill" designed to provide clarification to the existing AWP statutory scheme.  *See id.,* PageID ## 669-670; PageID # 671 and similar emails to legislators at PageID ## 673-700; PageID # 710 (J. Bohannon email to Gov. Bill Lee).

Though containing various provisions regulating *PBMs*, the legislation did not amend Tenn. Code Ann. § 56-7-2359 (the original "any willing pharmacy" statute) and added just one subparagraph to Tenn. Code Ann. § 56-7-3120 (the other statute under which Thrifty Med sought reinstatement to the McKee network).  The amendment to Tenn. Code Ann. § 56-7-3120 left former subsection (b) intact,[13] redesignated it as subsection (b)(1), and added a subsection (b)(2) that supplemented the statute's "anti-steering" component.

As adopted, Tenn. Code Ann. § 56-7-3120(b)(1) retained the statute's prohibition against a PBM's or covered entity's interference with a patient's right to choose a contracted pharmacy.  Section 56-7-3120(b)(2) made the statute's "anti-

---

[12] Ms. Bohannon urged others to do the same and to contact members of Congress as well.  *Id.*, PageID ## 699-700.  Ms. Bohannon also emailed Gov. Bill Lee urging him to sign the bill after it passed.  *Id*., PageID # 710.

[13] Subsection (b) is quoted *supra* at 12.

steering" component more specific by prohibiting PBMs and covered entities from offering financial or other incentives to persuade a patient to use a pharmacy owned by or financially beneficial to the PBM or covered entity.

The legislation purported to make the statutes upon which Thrifty Med relies specifically applicable to ERISA plans,[14] essentially confirming the position taken by the Department of Commerce and Insurance in Bulletin 21-01. The legislation did not change the existing statutes' fundamental requirements or the parties' respective positions regarding Thrifty Med's right (or lack thereof) to inclusion in the McKee network.

Thrifty Med's and the pharmacy lobby's efforts ultimately led to the passage of Public Chapter 1070. The Bohannons expressed their profound thanks to leadership in the Legislature for enacting the bill. Plaintiff's Supplemental Brief in Opposition to Thrifty Med's Motion to Dismiss, Ex. 1, R. 62-1, PageID ## 707-708.

### H.    Thrifty Med's Motion to Dismiss

As soon as the legislation passed, Thrifty Med filed a Motion to Dismiss McKee's Complaint for Lack of Subject Matter Jurisdiction, arguing that the

---

[14] Section 3 of Public Chapter 1070 amended the definition of "covered entity" contained in Tenn. Code Ann. § 56-7-3102(1). The amendment left intact and restated the subsection's list of "covered entities" but added plans governed by ERISA to the list. Sections 7 and 8 of Public Chapter 1070 similarly provided that notwithstanding any other law, Tennessee Code Annotated Title 56, Chapter 7, Part 31 (Pharmacy Benefits Managers) and Part 32 (Pharmacy Benefits) would apply to plans governed by ERISA.

amendments to Tennessee's "any willing pharmacy laws" contained in Public

Chapter 1070, coupled with a stipulation by Thrifty Med not to pursue

reinstatement to the McKee network "under the existing statutory scheme," made

McKee's Complaint moot.  Motion to Dismiss, R. 37, PageID # 325.  Thrifty Med's

Declaration and Stipulation in support of its Motion to Dismiss briefly recounted

Thrifty Med's removal from the McKee network and Thrifty Med's effort to obtain

reinstatement after the passage of Public Chapter 569 in 2021.  The Declaration

then stated that Thrifty Med would no longer pursue reinstatement "under the

current version (codifying Public Chapter 569) of Tennessee's 'Any Willing

Pharmacy' scheme, including Tenn. Code Ann. §§ 56-7-3102 and 56-7-3120."

Thrifty Med Dec., R. 38-2, PageID ## 348-349 (¶¶ 3-5, 7).  Thrifty Med's

declaration added, however, that "[i]t remains to be determined whether Thrifty

Med will pursue reinstatement under HB 2661/SB 2458," *i.e.*, under Public Chapter

1070.  *Id.*, PageID # 349 (¶ 7).[15]

    While professing uncertainty to the Court about its intent to seek

reinstatement to the McKee network under Public Chapter 1070, Thrifty Med

signaled its intent to rely on the law in this litigation.  In a July 2022 email to

---

[15] Thrifty Med's Memorandum in Support of its Motion to Dismiss similarly stated that it "remains to be seen" whether Thrifty Med will pursue reinstatement under the laws as amended.  Memorandum of Law in Support of Thrifty Med's Motion to Dismiss, R. 38, PageID # 332.

representatives of state and national pharmacy organizations, sent some two months

after Thrifty Med's Motion to Dismiss was filed, Julie Bohannon stated:

> We want to properly navigate this lawsuit, not only for ourselves, but for the validity of PC1070 and all independent pharmacies in our state. Unfortunately, I fear the path to true enforcement in January 2023 does hinge greatly on the outcome of our case. We do not want nor need to arrive at two negative precedents in the 6th circuit.

PageID # 706.

In a separate email to National Community Pharmacy Association CEO Doug

Hoey, Ms. Bohannon referenced the "clean up bill, PC1070," but expressed her

uncertainty about whether Mr. Hoey was "fully aware of what hangs in the

balance." Plaintiff's Supplemental Brief in Opposition to Thrifty Med's Motion to

Dismiss, Ex. 1, R. 62-1, PageID # 711. Referring to Thrifty Med's current litigation

with McKee, Ms. Bohannon stated that Thrifty Med's "next move or lack thereof

will likely set the tone for how truly enforceable this new law will be." *Id*.

McKee served Requests for Admission addressing matters relevant to Thrifty

Med's claims of mootness, including Thrifty Med's intent to seek reinstatement to

the McKee network after Public Chapter No. 1070 became effective. *See* Thrifty

Med's Response to Plaintiff's First Request for Admissions, R. 53-1, PageID ##

551-561.[16] In its Response to the Requests for Admission, Thrifty Med would

---

[16] The Response is Exhibit 1 to Plaintiff's Brief in Opposition to Defendant's Motion to Stay Discovery, R. 53.

21

neither admit nor deny that it reasonably anticipated pursuing reinstatement to the McKee pharmacy network after Public Chapter 1070 became effective.  *Id*., PageID # 557 (Response to Request 20).  Thrifty Med admitted that it was unwilling to stipulate that it would *not* pursue reinstatement to the McKee network under the Tennessee statutes as amended by Public Chapter 1070.  *Id.*, PageID # 558 (Response to Request 21).[17]

## I.    Proceedings on Motion to Dismiss

McKee opposed Thrifty Med's Motion to Dismiss, noting first that the amendments to the statutes upon which Thrifty Med was relying operated in the same fundamental way as the existing law and thus did not make the case moot. Plaintiff's Brief in Opposition to Motion to Dismiss, R. 45, PageID ## 423-427. McKee further noted that because Thrifty Med had voluntarily reversed course in the litigation to support its claim of mootness (*i.e*., by pausing but not terminating its request for reinstatement), Thrifty Med bore a high burden to establish that there was no reasonable expectation that Thrifty Med would seek reinstatement under the statutes as amended.  *Id.*, PageID ## 427-430.  Though this burden was on Thrifty Med and not McKee, McKee cited extensive factual and documentary evidence

---

[17] Thrifty Med's Response generally admitted the facts regarding its efforts to obtain reinstatement under Public Chapter 569, its filing of the administrative complaints with the Department of Commerce and Insurance, the Department's responses to those complaints, and the content and location of the billboards discussed above.  *Id.*, PageID ## 552-560 (Responses to Requests 1-18, 23-30).

showing that Thrifty Med had been pursuing reinstatement to the McKee network for some three years, had taken advantage of Public Chapter 569 shortly after it became effective in 2021, had continued to assert its entitlement to reinstatement after the administrative complaints were closed, had actively lobbied for the passage of Public Chapter 1070, and had stressed the applicability and importance of the law to this litigation. *Id.*, PageID ## 418-422, 429-430; Plaintiff's Supplemental Brief in Opposition to Thrifty Med's Motion to Dismiss, R. 62, PageID ## 647-650 and Ex. 1 (R. 62-1), PageID ## 651-717.

McKee further noted that Thrifty Med's agreement to pause its request for reinstatement did not erase Thrifty Med's allegation that McKee was in violation of the law. McKee pointed out that its request for declaratory relief remained viable because the statutes McKee was accused of violating remained on the books and McKee was faced with the risk of violating the statutes as written unless it changed course and modified the design and administration of the McKee Health Plan. Transcript of Oral Argument, R. 70, PageID ## 825-826, 844-845, 853.

The District Court granted Thrifty Med's Motion to Dismiss, concluding that there was no longer a live case or controversy between the parties. Memorandum Opinion and Order, R. 67, PageID ## 794, 799, 802. The Court recognized that the burden was on Thrifty Med to establish mootness and acknowledged McKee's argument that a party voluntarily changing its position during litigation (here by Thrifty Med's stipulation that it would not seek reinstatement under the then current

"any willing pharmacy" statutory scheme) bore a heavy burden to show there was no reasonable likelihood of future action.  *Id.*, PageID ## 797, 799, 800.

The Court noted that there currently were no pending state enforcement actions against McKee, that Thrifty Med's administrative complaints had been dismissed with no relief granted by the Department of Commerce and Insurance, and that Thrifty Med had not filed any further administrative complaints or taken any other legal action to pursue reinstatement after McKee filed its Complaint on November 15, 2021.  *Id.*, PageID ## 800, 801.

The Court minimized the significance of Thrifty Med's express reservation of its right to seek reinstatement under Public Chapter 1070, stating that Thrifty Med's stipulation was not "comprehensive enough" to suit McKee.  Id., PageID # 800. The Court then gave significant weight to a statement by Thrifty Med's counsel during oral argument that Thrifty Med had "no current intent or plan" to pursue reinstatement under the statues as amended.  *Id.*, PageID # 801.  In a footnote, the Court briefly referenced some of the evidence introduced by McKee and concluded that McKee had not shown that there was a "reasonable likelihood that Thrifty Med will seek reinstatement under the PC 1070 amendments."  *Id.*, PageID ## 801-802, n.7.

### J.    Appeal

McKee filed this timely appeal of the District Court's Memorandum Opinion and Order.  Notice of Appeal, R. 68, PageID ## 803-804.

## SUMMARY OF ARGUMENT

In late April of 2022, the Tennessee Legislature adopted Public Chapter 1070 which, among other provisions, included certain amendments to the state's "any willing pharmacy" statutes (Tenn. Code Ann. §§ 56-7-2359 and 56-7-3120) under which Thrifty Med had pursued reinstatement to the McKee Health Plan's pharmacy network. Considering the amendments to be more favorable to its prospects for reinstatement, Thrifty Med then stipulated that it would no longer pursue reinstatement under the "current version" of the law while stating that it "remained to be seen" whether Thrifty Med would pursue reinstatement under the statutes as amended.

The District Court held that McKee's action for declaratory and injunctive relief was moot, relying on Thrifty Med's equivocal stipulation and a similar statement by Thrifty Med's counsel that Thrifty Med had no "current plans" to pursue reinstatement under the amendments contained in Public Chapter 1070. The Court concluded that McKee had failed to demonstrate that there was a reasonable expectation that Thrifty Med would pursue reinstatement under the law as amended.

The District Court erred in several respects. Because Thrifty Med had voluntarily changed its litigation position by stating that it would no longer pursue reinstatement to the McKee network under current law, Thrifty Med bore a high burden to establish that there was no reasonable likelihood that it would seek reinstatement under the law as amended. The District Court, however, effectively

placed the burden on McKee to establish that there *was* a likelihood that Thrifty Med *would* continue its quest for reinstatement in the future.

Although the burden was on Thrifty Med, McKee introduced extensive factual and documentary evidence showing that future reinstatement efforts by Thrifty Med could reasonably be expected.  The evidence included Thrifty Med's three-year quest for reinstatement, Thrifty Med's express reservation of its right to seek reinstatement under the amended law, Thrifty Med's filings in the litigation below asserting that it was entitled to reinstatement and that McKee was violating the law by excluding Thrifty Med, Thrifty Med's intensive lobbying for the amendments in question, Thrifty Med's written communications tying the effectiveness of Public Chapter 1070 to Thrifty Med's success in its lawsuit against McKee, and the significant financial gain that Thrifty Med would achieve through reinstatement.

The District Court disregarded the substantial evidence introduced by McKee.  In concluding that there could be no reasonable expectation that Thrifty Med would seek reinstatement under the amendments contained in Public Chapter 1070, the Court, improperly, gave substantial weight to Thrifty Med's and its counsel's equivocal statements that Thrifty Med had no *current* plans to seek reinstatement while minimizing the fact that Thrifty Med had expressly reserved its right to do so.  The Court also gave undue weight to the closure of administrative complaints previously filed by Thrifty Med with the Tennessee Department of

26

Commerce and Insurance, stating incorrectly that Thrifty Med had engaged in no salient activity to pursue reinstatement after McKee's declaratory judgment action was filed.  In fact, Thrifty Med asserted its entitlement to reinstatement and McKee's alleged violation of the law *on the record in the proceedings below*, while pushing for legislation to enhance its reinstatement efforts.  The Declaratory Judgments Act does not, in any event, require that judicial or administrative action be pending for there to be a case or controversy between the parties.

The District Court's order granting Thrifty Med's Motion to Dismiss should be reversed, and the case should be remanded to the District Court for adjudication on the merits.

## ARGUMENT

## THE DISTRICT COURT ERRED IN GRANTING THRIFTY MED'S MOTION TO DISMISS.

### A.    Standard of Review

Thrifty Med's Motion to Dismiss for Lack of Subject Matter Jurisdiction was filed pursuant to Federal Rule of Civil Procedure 12(b)(1).  Motion to Dismiss, R. 37, PageID # 325.  The District Court treated the motion as a factual attack on the pleadings, permitting the Court to weigh the evidence to determine whether subject matter jurisdiction exists.  Memorandum Opinion and Order, R. 67, PageID # 798.

Review of a district court's decision to dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) is *de novo*.  *Cartwright v. Garner*, 751 F.3d 752, 760 (6th Cir. 2014).  More specifically, when a Rule 12(b)(1) motion resolves a factual challenge to jurisdiction, "[f]actual findings made by the district court are reviewed for clear error," but "the district court's application of the law to the facts is reviewed *de novo*."  *Id*.

Likewise, when a *declaratory judgement action* is dismissed for failure to meet the constitutional requirement of a "case or controversy," review is *de novo*. *Mobil Oil Corp. v. Att'y Gen. of Com. of Va.*, 940 F.2d 73, 75 (4th Cir. 1991).  In particular, appellate review of the jurisdictional issue of mootness is *de novo*.  *In re Arnold & Baker Farms*, 85 F.3d 1415, 1419 (9th Cir.1996) ("Mootness is a jurisdictional issue which we review *de novo*."), *cert. denied*, 519 U.S. 1054 (1997); *Bldg. & Const. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1491 (10th Cir. 1993).

**B.** **The District Court Incorrectly Concluded that There Was No Reasonable Expectation that Thrifty Med Would Pursue Reinstatement to the McKee Pharmacy Network.**

    1.   <u>The District Court acknowledged that the burden was on Thrifty Med to establish mootness but effectively shifted the burden to McKee.</u>

When this litigation began and during the years preceding it, Thrifty Med consistently maintained that it was entitled to be reinstated to McKee's pharmacy network and that McKee was violating Tennessee law by excluding Thrifty Med. Thrifty Med took this position in its filings in this litigation, agreed that an actual controversy existed regarding McKee's refusal to include Thrifty Med in the network, and likewise agreed that this case presented dispositive legal questions regarding the preemption and applicability of Tennessee's any willing pharmacy laws (Tenn. Code Ann. §§ 56-7-2359 and 56-7-3120).  Answer, R. 12, PageID ## 60, 62, 64-66 (¶¶ 10, 32, 40); Federal Rule of Civil Procedure 26(f) Discovery Plan, R. 16, PageID ## 79-80 (¶ 2).

McKee and Thrifty Med ultimately filed and extensively briefed cross motions for summary judgment on these dispositive issues.  Plaintiff's Motion for Summary Judgment and supporting briefs, R. 35, 36, 47; Thrifty Med's Motion to Dismiss or, in the Alternative, for Summary Judgment and supporting memoranda,

R. 37, 38, 44.[18]  Thrifty Med changed its position and paused its three-year campaign for reinstatement *only* when the Tennessee legislature passed amendments to the law which, in Thrifty Med's view, *strengthened* Thrifty Med's prospects for reinstatement to the McKee network.  *See, e.g.*, Thrifty Med's Memorandum In Support of Motion to Dismiss, R. 38, PageID ## 334-335 (asserting that Public Chapter 1070 amendments specifically make Tennessee's "any willing pharmacy" laws applicable to ERISA plans).[19]

a.    <u>Thrifty Med bore a high burden of proof because it voluntarily changed its litigation position to support a claim of mootness.</u>

The United States Supreme Court and the Sixth Circuit have made clear that a party's voluntary termination of an activity or position while a case is pending will not normally make a case moot.  In the Sixth Circuit, the bar is high:

> The standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

---

[18] Thrifty Med's Motion for Summary Judgment (R. 37) was an alternative motion requesting judgment on the two dispositive issues if the District Court determined that the case was not moot.

[19] As noted *infra* at 52, the amendments do not alter Thrifty Med's position that, as a "willing pharmacy," it is entitled to participate in the McKee network.  The amendments do make the dispositive issue of ERISA preemption all the more relevant.

*Stewart v. Blackwell*, 444 F.3d 843, 855-56 (6th Cir. 2006) (superseded on other grounds by *Stewart v. Blackwell*, 473 F.3d 692 (6th Cir. 2007) (*quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). *See also Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019); *Blackwell v. City of Inkster*, 596 F.Supp.3d 906, 915 (E.D. Mich. 2022) (denying Rule 12(b)(1) motion to dismiss on grounds of mootness, noting "Defendants have not borne their burden of demonstrating that there is no reasonable expectation that the conduct [Plaintiff] complains of will recur.").

As this Court has further explained, "the reasoning behind this heavy burden is simple: courts want to protect a party from an opponent who seeks to defeat judicial review by temporarily altering its behavior. Otherwise, the courts would be compelled to leave [t]he defendant . . . free to return to his old ways." *Youngstown Publ'g Co. v. McKelvey*, 189 F. App'x 402, 405 (6th Cir. 2006) (internal quotations omitted).

The Supreme Court has likewise held that a party's voluntary change in position while a case is pending will only make a case moot if there is no reasonable expectation that the party will pursue a similar course of conduct in the future. *See, e.g., Los Angeles Cty. v. Davis, 440 U.S. 625, 631 (1979); Knox v. Serv. Emps. Int'l Union, Loc. 1000, 567 U.S. 298, 307–08 (2012).* The Court views such "voluntary cessation" with suspicion and has noted that the burden of establishing mootness on these grounds is a heavy one. *Davis*, 440 U.S. at 631. This is because "a dismissal

for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox*, 567 U.S. at 307–08. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288–89 (1982) (City's removal of ordinance's objectionable language would not preclude it from reenacting precisely the same provision if court allowed the change to defeat federal jurisdiction).

Discussing the moving party's high burden in establishing mootness, the Supreme Court has stated that a case "becomes moot only when it is *impossible* for a court to grant any effectual relief whatever to the prevailing party." *Knox*, 567 U.S. at 307 (emphasis added). In *Northeast Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla*., 508 U.S. 656 (1993), one party asserted that the repeal of a challenged ordinance rendered the case moot. The Supreme Court disagreed. Citing *City of Mesquite*, the Court stated:

> Nor does it matter that the new ordinance differs in certain respects from the old one. *City of Mesquite* does not stand for the proposition that it is only the possibility that the *selfsame* statute will be enacted that prevents a case from being moot; if that were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect.

*Ne. Fla.*, 508 U.S. at 662 (emphasis in original).

Thrifty Med changed its position in order to support a claim of mootness but refused to stipulate that it would not take advantage of the law it considers more favorable. This is precisely the type of procedural maneuvering the courts disfavor. Thrifty Med – not McKee – bore the burden on this issue. The burden is high, and

it was incumbent on Thrifty Med to demonstrate that under all the facts and circumstances, there could be *no* reasonable expectation that Thrifty Med would pursue reinstatement under the law as amended.

      b.   <u>The District Court effectively shifted Thrifty Med's burden to McKee.</u>

In its Memorandum Opinion and Order, the District Court correctly stated that "[t]he burden to establish mootness lies with the party asserting mootness – here, the Defendant." Memorandum Opinion and Order, R. 67, PageID # 797, *citing Memphis A. Philip Randolph Inst. v. Hargett,* 2 F.4th 548, 558 (6th Cir. 2021), and *Adarand Constuctors, Inc. v. Slater,* 528 U.S. 216, 222 (2000). The District Court acknowledged McKee's position, based on the authorities discussed above, that a party like Thrifty Med which bases a claim of mootness on the party's voluntary change of position during litigation bears a heavy burden to show there is no reasonable likelihood that it will resume its previous position in the future. *Id*., PageID # 800.

The Court then concluded, however, that the evidence provided *by McKee* did not show that there was a reasonable likelihood that Thrifty Med *would* seek reinstatement under the Public Chapter 1070 amendments. *Id*., PageID ## 801-802, n. 7. Instead of requiring Thrifty Med to meet the heavy burden the law requires, the Court concluded that there was no reasonable expectation that Thrifty Med would pursue reinstatement in the future because Thrifty Med was not *currently*

seeking reinstatement under the Public Chapter 1070 amendments and no

enforcement action was currently pending.

As discussed below, the District Court disregarded extensive factual and

documentary evidence introduced by McKee establishing that future reinstatement

efforts by Thrifty Med could reasonably be expected or, at a minimum, that Thrifty

Med had not sustained *its* burden to show that there was no reasonable likelihood of

such action.

> 2.    The District Court, erroneously, gave substantial weight to
> Thrifty Med's counsel's statement that Thrifty Med had no
> current intent or plan to seek reinstatement under Public Chapter
> 1070.

Throughout these proceedings – in Thrifty Med's Motion to Dismiss and

supporting briefs and stipulation, in Thrifty Med's responses to McKee's Requests

for Admission and during oral argument – Thrifty Med has reserved its right to seek

reinstatement under the amendments contained in Public Chapter 1070 and has

declined to stipulate that it would not do so.  During oral argument in the

proceedings below, Thrifty Med continued to keep its options open, stating it could

not predict whether it would want to take advantage of the new law while stating

there was "no present intent to file right now."  Transcript of Oral Argument, R. 70,

PageID # 838.  After observing that the new law was not yet effective, the Court

pressed Thrifty Med further, resulting in this telling exchange:

> THE COURT: Do you all -- I mean, does Thrifty Med -- do you plan to -- do
> you want to be a part -- still be a part of McKee Foods? You –

MR. GRAY [Counsel for Thrifty Med]: That's -- that's a good question, Your Honor.

THE COURT: Well, that's why I'm asking.

MR. GRAY: Yeah. And -- *and the answer is we don't know*. And that is –

THE COURT: *How could you not know?*

MR. GRAY: Here's -- here's why. Here's why. There are actually a number of business relief reasons. One is this has not been a pleasant experience for Thrifty Med. I mean, this -- there's actually – you know, they worked closely with McKee for years. Now they've been sued. This has been a tough contingence. We've had to do a lot of discovery. It's not a very happy relationship. And certainly the questions arise of do I really want to work with -- with McKee? That's a major issue. Is it worth it?

THE COURT: *Is it*?

MR. GRAY: That's -- that's a serious question they have. *They can't answer that right now.*

*Id.*, PageID # 839 (emphasis added).

Following argument by McKee that Thrifty Med's agreement to pause its request for reinstatement was not binding and did not eliminate the state laws' attack on McKee's rights under its ERISA plan (*Id.*, PageID ## 852-853), Thrifty Med's counsel stated that the Court should not have to predict the future but that Thrifty Med had "no current intent or current plan" to seek reinstatement under Public Chapter 1070. *Id.*, PageID # 856.[20]

---

[20] In fact, under the authorities discussed above, it *was* incumbent on the Court to evaluate whether there was a reasonable expectation that Thrifty Med would seek

Despite Thrifty Med's repeated, explicit disclaimers, that it "remains to be seen" whether Thrifty Med would seek reinstatement under Public Chapter 1070, the Court gave substantial weight to counsel's statement near the end of the hearing that Thrifty Med had no *current* intent or plan to do so.[21]  In fact, the statement by counsel was one of the principal bases for the Court's conclusion that there was no reasonable expectation that Thrifty Med would pursue reinstatement in the future.

Of course, unsworn statements of counsel are not evidence.  *Tapco Prod. Co. v. Van Mark Prod. Corp.*, 446 F.2d 420, 429 (6th Cir. 1971); *Kita v. Comm'r of Social Sec.*, No. 1:08–cv–446, 2009 WL 1464252, *7 (W.D. Mich. May 18, 2009). Although an attorney's statements may constitute judicial admissions if they are "deliberate, clear and unambiguous," remarks which are "guarded and qualified" do not.  *MacDonald v. General Motors Corp*, 110 F.3d 337, 340 (6th Cir. 1997).

Thrifty Med's statements regarding its intent to seek reinstatement have been "guarded and qualified" throughout these proceedings, beginning with Thrifty Med's original stipulation and continuing through its counsel's statements during oral argument.  Even accepting counsel's statements at face value, they constituted nothing more than a statement of present intent as of the date of oral argument

---

reinstatement to the McKee network and whether Thrifty Med had satisfied *its* burden to show there was not.

[21] The District Court observed that there were reasons "at this stage" why Thrifty Med "*may* not wish to continue business relations with McKee" and that the Court was inclined to take Thrifty Med at its word.  *Id.*, PageID # 801 (emphasis added).

36

(when, as noted by the District Court, Public Chapter 1070 had not even become effective).  As in *Knox* and *City of Mesquite, supra* at 31-32, Thrifty Med's statements of current intent in no way prevented Thrifty Med from pursuing a different course of action as soon as the case was dismissed.  The pertinent inquiry, discussed below, is whether under all the facts, circumstances and evidence in the record, Thrifty Med sustained its burden of demonstrating that there was *no reasonable expectation* that it would continue to pursue reinstatement to the McKee network.

        3.     <u>The District Court gave undue weight to the closure of Thrifty Med's administrative complaints while minimizing or disregarding other material evidence of Thrifty Med's pre- and post-litigation conduct and assertions.</u>

In addition to its reliance on Thrifty Med's qualified Declaration and Stipulation (R. 38-2) and the similarly equivocal statements of its counsel, the District Court gave substantial weight to its finding that Thrifty Med had not engaged in any "legally salient" administrative or judicial action following the closure of its administrative complaints in October and November 2021. Memorandum Opinion and Order, R. 67, PageID ## 800-802.  This factual finding is erroneous in at least two respects.

First, as discussed above, Thrifty Med asserted its entitlement to reinstatement to the network and McKee's alleged violation of Tennessee law *on the record* in its filings *in this litigation* – obviously after the administrative

complaints were closed.  *See* discussion *supra* at 16-17.  Second, Thrifty Med took action with the Tennessee legislature and the Governor to remedy what it viewed as an injustice in the dismissal of the administrative complaints.  *See* discussion *supra* at 17-18.

> a.  Thrifty Med's extensive efforts to secure the passage of Public Chapter 1070 created a reasonable inference that Thrifty Med would rely on the legislation when passed.

Thrifty Med urged the Legislature to pass and the Governor to sign the bill which became Public Chapter 1070.  In her email to Governor Lee, Julie Bohannon complained of the Department of Commerce and Insurance's failure to enforce the current law and stated that the amendments were needed to clarify the law and to tighten up "ridiculous loop holes."  R. 62-1 (Exhibit 1 to Plaintiff's Supplemental Brief), PageID # 710.  In other emails, Ms. Bohannon specifically linked Public Chapter 1070 to Thrifty Med's efforts and position in this lawsuit.  *See* discussion *supra* at 20-21.  The District Court erred in disregarding the significance of this evidence.  *See* Memorandum Opinion and Order, R. 67, PageID ## 800-801.

The District Court was, of course, obligated to consider the reasonable inferences from the evidence presented by the parties.  *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012).  It is certainly reasonable to infer that Thrifty Med would seek to take advantage of legislation it promoted to close "loop holes" in the process which resulted in the closure of Thrifty Med's administrative complaints against McKee.

   b.   The closure of Thrifty Med's administrative complaints did not end the dispute between the parties.

As discussed during oral argument, Thrifty Med's claim that McKee was in violation of Tennessee law did not simply go away when the Department of Commerce and Insurance closed its files.   Transcript of Oral and Argument, R. 70, PageID ## 826, 844-845.  The District Court minimized this point, essentially stating that the "allegation" (quotation marks the Court's) that McKee was in violation of the law and that Thrifty Med was entitled to reinstatement did not give rise to a case or controversy.  McKee is unaware of any requirement that there be pending administrative or judicial action for a dispute subject to the Federal Declaratory Judgments Act to exist, and Thrifty Med cited none in its briefing below.

The record below shows that Thrifty Med itself did not consider the closure of the complaints to be significant for jurisdictional purposes.  McKee's Complaint specifically referenced Thrifty Med's three administrative complaints which were filed in September and October 2021.  Complaint, R. 1, PageID ## 6-7 (¶ 28).  Thrifty Med was aware the complaints had been closed when it filed its Answer on December 21, 2021, but did not suggest that this somehow deprived the District Court of jurisdiction or meant that there was no controversy between the parties.  *See* Answer, R. 12, PageID # 64 (¶ 28).  To the contrary, Thrifty Med admitted that

an actual controversy existed and that the District Court had subject matter jurisdiction. *Id.*, PageID ## 62, 64-65 (¶¶ 10, 32).

The closure of the administrative complaints did not, in any event, dissuade Thrifty Med from pursuing reinstatement to the McKee Health Plan's pharmacy network. Even after the complaints were closed and the Department in one case stated that it had no jurisdiction over self-funded ERISA plans, Thrifty Med did not back down and continued to assert its entitlement to reinstatement in this litigation.

In its Motion to Dismiss, Thrifty Med for the first time made reference to the closure of the administrative complaints[22] and alleged that the District Court lacked subject matter jurisdiction. The only thing that changed after Thrifty Med filed its Answer admitting jurisdiction was the enactment of statutory amendments Thrifty Med considered more favorable to its prospects for reinstatement.[23]

---

[22] *See* Thrifty Med Declaration and Stipulation, R. 38-2, PageID # 349 (¶ 6).

[23] When it filed its Motion to Dismiss, Thrifty Med made clear that it considered its prospects for reinstatement to be stronger by virtue of the amendments contained in Public Chapter 1070. *See* Thrifty Med's Memorandum of Law in Support of Motion to Dismiss, R. 38, PageID ## 331-332 (emphasizing "any willing pharmacy" amendments) and 334 (arguing that by virtue of the amendments, employers with ERISA-governed plans must abide by state "Any Willing Pharmacy" laws).

c.      Declaratory relief was warranted because the Tennessee any
willing pharmacy laws conflicted with McKee's rights under its
ERISA plan.  Neither Thrifty Med nor the State stipulated that it
would not enforce the laws against McKee.

In the proceedings below, McKee explained the dilemma with which it was

faced, regardless of whether enforcement proceedings by Thrifty Med or any other

pharmacy were pending.  Plaintiff's Memorandum in Opposition to Intervenor's

Motion to Dismiss, R. 31, PageID ## 149-150; Transcript of Oral Argument, R. 70,

PageID ## 825-826, 844-845, 853.[24]  Deciding which providers are included in a

network is a central matter of plan administration – a decision which McKee as plan

administrator and fiduciary has the right and responsibility to make under ERISA,

especially when it concludes that a provider has acted in a manner that harms the

plan and its participants.  Complaint, R. 1, PageID # 9 (¶34); Transcript of Oral

Argument, R. 70, PageID ## 862-863.  *See Nichols*, 227 F.3d at 363 (Kentucky any

willing provider laws preempted because they mandate benefit plan structures and

"directly affect the administration of the plans"); *CIGNA Healthplan of Louisiana,*

*Inc. v. State of La. ex rel. Ieyoub*, 82 F.3d 642, 648–49 (5th Cir. 1996) (Louisiana

Any Willing Provider statute found to mandate benefits under ERISA plans);

*Community Health Partners, Inc. v. Com. of Ky.*, 14 F. Supp. 2d 991, 1000–01

(W.D. Ky. 1998), *aff'd* 230 F.3d 1357 (6th Cir. 2000) (state law that precludes

---

[24] *See also* Complaint, R. 1, PageID # 10 (¶ 38).

ERISA plans from using restricted provider networks impermissibly regulates the substantive terms a plan can offer).

Notwithstanding Thrifty Med's strategic decision to temporarily pause its quest for reinstatement to the McKee network, the state any willing provider laws Thrifty Med accused McKee of violating remain on the books.  McKee's right to design and administer its ERISA plan was attacked by Thrifty Med and remains under attack by the Tennessee laws that have been enacted, regardless of Thrifty Med's current action or inaction.  *See* Transcript of Oral Argument, R. 70, PageID ## 844-845.  McKee is in the position of exercising its right under ERISA to establish and administer its pharmacy network or to risk violating state law.  *Id.*, PageID ## 825-826, 844; Complaint, R. 1, PageID # 10 (¶ 38).

Federal jurisdiction under these circumstances was addressed by the Fourth Circuit in *Mobil Oil Corp. v. Attorney General of the Common Wealth of Virginia*, 940 F.2d 73 (1991).  In *Mobil Oil*, Mobil filed suit for declaratory and injunctive relief in federal district court, contending that amendments to the Virginia Petroleum Products Franchise Act were unconstitutional under a variety of theories, including preemption by the federal Petroleum Marketing Practices Act.  The Virginia Attorney General moved to dismiss the action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  The district court dismissed the action for failure to present a "case or controversy," and Mobil appealed.

The Virginia Attorney General argued – and the district court held – that no dispute or case or controversy existed unless Mobil could show that the Attorney General intended to enforce the statute.  Rejecting this argument, the Fourth Circuit pointed out that the Attorney General had not *disclaimed* any intention of exercising her enforcement authority and had taken the position that "Mobil should violate the law and wait to see what happens."  *Mobil Oil Corp*., 940 F.2d at 76.  Quoting the United States Supreme Court in a similar action involving the Virginia Attorney General, the Fourth Circuit stated:

> We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise. We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them.

*Id*. (quoting *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393, 108 S. Ct. 636, 643, 98 L. Ed. 2d 782, *certified question answered sub nom. Commonwealth v. Am. Booksellers Ass'n, Inc.,* 236 Va. 168, 372 S.E.2d 618 (1988)).  The Court also noted that the Attorney General's willingness to attack the substance of Mobil's claims created the impression of a "case or controversy" – precisely what the attorney general claimed to be absent.  *Id.* at 77.  *See also Health Maint. Org. Ass'n of Kentucky v. Nichols* (plaintiffs seeking declaration that Kentucky's any willing provider statute was unconstitutional and preempted by ERISA had standing to

bring the action because they were affected by the terms of the statute in their role as administrators of health benefit plans).[25]

4.    <u>The District Court failed to consider relevant facts, circumstances and documentary evidence demonstrating that there *was* a reasonable expectation that Thrifty Med would pursue reinstatement to the McKee network.</u>

Even if it were McKee's burden to demonstrate that there was a reasonable expectation that Thrifty Med would continue to pursue reinstatement to the McKee pharmacy network, McKee easily sustained that burden. In concluding that McKee had not established that there was a reasonable expectation that Thrifty Med would pursue reinstatement, the District Court focused almost entirely on Thrifty Med's own statements regarding its current intent and the absence of a present enforcement action while disregarding or minimizing extensive factual and documentary evidence presented by McKee. The District Court erred.

In considering whether action which a party has voluntarily paused or ceased could reasonably be expected to recur, the courts must consider the totality of the circumstances. As stated by Wright & Miller, "[a]s with most mootness questions, the answer [to the question of whether conduct could reasonably be expected to recur] depends in large part on a uniquely individualized process of prediction

---

[25] *Health Maint. Org. Ass'n of Kentucky v. Nichols*, No. CIV.A. 97-24, 1998 WL 34103663, at *2 (E.D. Ky. Aug. 6, 1998), *aff'd in part and remanded sub nom. Kentucky Ass'n of Health Plans, Inc. v. Nichols*, 227 F.3d 352 (6th Cir. 2000), *aff'd sub nom. Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003).

centered on the facts and parties of each case."  13B Charles Alan Wright, *et al.*,

*Federal Practice and Procedure* § 3533.5 (3d ed.).

>    a.    <u>Thrifty Med's reservation of its rights to seek reinstatement to the McKee network creates a reasonable expectation that Thrifty Med will exercise that right.</u>

The First Circuit's decision in *Adams v. Bowater, Inc.*, 313 F.3d 611 (1st Cir.

2002), is instructive and includes striking similarities to the instant case.  In *Adams*,

defendant Bowater was the administrator of a pension plan in which employees of a

subsidiary company participated.  Bowater decided to amend the plan to cut back on

early retirement benefits offered to the subsidiary's employees.  The affected

employees sued and sought a declaration that the plan amendment violated Section

204(g) of ERISA, 29 U.S.C. § 1054(g).  Bowater then retreated from its original

position and sent a letter stating that work performed by the subsidiary's employees

would continue to be credited toward early retirement, but Bowater declined to

enter into a consent decree conceding that the amendment was unlawful or

promising not to adopt the same amendment in the future.  The district court

dismissed key counts of the plaintiffs' complaint as moot, and an appeal to the First

Circuit followed.

The First Circuit observed that the district court had determined that any

threat that the amendment would be reintroduced was "speculative" and that

Bowater's behavior could not reasonably be expected to recur.  *Id.*, 313 F.3d at 613.

The Court commented that the likelihood of recurrence was very hard to estimate

and that several considerations worked in favor of litigating the case to judgment.

One factor was Bowater's persistent unwillingness either to admit that its

amendment was unlawful or to say that the amendment would not be reintroduced.

*Id.* at 614.  In rationale applicable to the instant case, the First Circuit observed:

> Finally, Bowater could easily have said on the record that it would not in the future reintroduce for Great Northern workers the substance of the challenged amendment. If this had been done without hesitation in the district court, this almost certainly would have persuaded us that the quarrel was moot. Yet, even at oral argument on this appeal, Bowater's counsel said he could not give such a commitment to the plaintiffs.

*Id.*

The First Circuit further stated that when a defendant is unwilling to give

assurance that the conduct in question will not be repeated, "a natural suspicion is

provoked that recurrence may well be a realistic possibility."  *Id.* at 615.  The Court

added that "[j]ust *how* possible depends very much on the circumstances," but

because it could be in Bowater's interest to try to reinstate the amendment,

prudential factors tipped the balance against mootness.  *Id.* (emphasis in original).

Thus, rather than supporting Thrifty Med's claim of mootness, Thrifty Med's

and its counsel's equivocation and unwillingness to stipulate that Thrifty Med

would *not* continue to pursue reinstatement to the McKee network did just the

opposite.[26]  Thrifty Med's *express reservation* of its right to seek reinstatement

---

[26] *See* Thrifty Med's Response to Plaintiff's First Request for Admissions, R. 53-1, PageID # 558 (Response to Request No. 21).

under Public Chapter 1070 made Thrifty Med's claim of mootness even weaker than Bowater's.

        b.     <u>Reinstatement to the McKee network would provide Thrifty Med with major financial gain.</u>

The First Circuit's decision in *Adams* also illustrates that the potential *benefit* to a party (referred to in *Adams* as "prudential factors") must be considered in assessing whether conduct may reasonably be expected to recur.  In the instant case, the potential benefit to Thrifty Med in pursuing reinstatement under Public Chapter 1070 is huge.  Thrifty Med for years benefited from the patronage of numerous McKee employees who worked at McKee's plants near the pharmacy.  According to Greg Bohannon, when this "great relationship with the largest employer in our area" ended, Thrifty Med lost 35-40% of its business and had to cut its staff by 50%.  Text from Greg Bohannon to Tennessee House Speaker Cameron Sexton, R. 62-1, PageID # 717.  Notwithstanding Thrifty Med's claimed uncertainty about its interest in doing business with McKee, it is undisputed that Thrifty Med would have a strong financial interest in pursuing reinstatement under the law it urged the Legislature to pass.

        c.     <u>McKee's evidence was significant and not speculative. TCI/TKR Cable does not support Thrifty Med's position or the District Court's holding.</u>

Minimizing the evidence introduced by McKee, the District Court concluded that because no legal action for reinstatement was currently pending and

because counsel had stated that Thrifty Med had no "current plans" to pursue reinstatement, McKee's arguments amounted to "speculation" over what Thrifty Med might do in the future. Memorandum Opinion and Order, R.67, PageID # 801. The Court cited *TCI/TKR Cable v. Johnson*, 30 Fed. App'x. 581 (6th Cir. 2002), for the proposition that the Sixth Circuit had declined to recognize speculation over a party's future legal plans as evidence of an actual controversy. *Id.*

In light of the factual and documentary evidence introduced by McKee coupled with the legal significance of Thrifty Med's reservation of its right to seek reinstatement, the Court's characterization of McKee's arguments as "speculation" was simply incorrect. Moreover, the *TCI/TKR Cable* case does not support the District Court's conclusion that Thrifty Med's qualified stipulation and statement of counsel made this case moot.

In *TCI/TKR Cable*, two cable companies filed a federal declaratory judgment action to prevent a cable subscriber, Mr. Johnson, from pursuing his state class action challenging the companies' practice of requiring subscribers to pay a prorated share of a Kentucky tax. While the case was pending, Mr. Johnson's state class action was dismissed, but not with Mr. Johnson's consent. Mr. Johnson argued that the dismissal of his state class action made the cable companies' declaratory judgment action, filed to prevent him from pursuing the class action, moot.

48

This Court cited Supreme Court precedent holding that a party's voluntary cessation of a challenged practice does not deprive a federal court of jurisdiction or make a case moot.  This Court stated that the possibility that a party may change his mind in the future was *sufficient to preclude a finding of mootness.  TCI/TKR Cable*, 30 Fed. App'x. at 584 (citing *United States v. Generix Drug Corp.*, 460 U.S. 453, 456 n.6 (1983)).

This Court then distinguished *Generix* and similar Supreme Court decisions by pointing out that Mr. Johnson had not *voluntarily* dismissed his state class action.  In the Court's view, this negated the inference that Mr. Johnson was trying to defeat federal jurisdiction by temporarily abandoning his state court suit.  *Id.*

The facts presented in the instant case are, of course, quite different.  After the passage of amendments to the law which Thrifty Med believed would enhance its future prospects for reinstatement, Thrifty Med voluntarily agreed to pause its current efforts and simultaneously moved to dismiss on grounds of mootness. Thrifty Med made clear that it was retaining its option to pursue reinstatement under Public Chapter 1070.  In contrast to the dismissal of Mr. Johnson's case in *TCI/TKR Cable*, Thrifty Med's agreement to forego any action for the time being was *voluntary*, and there can be no reasonable expectation that Thrifty Med will not renew its three-year quest for reinstatement in the future.

Thrifty Med's actions both before and after McKee's declaratory judgment action was filed, discussed in detail in McKee's Statement of the Case, create a

strong inference that continued efforts by Thrifty Med to obtain reinstatement could

reasonably be expected.  At an absolute minimum, the record below shows that

Thrifty Med under no circumstances sustained *its* heavy burden to establish that

there was *no* reasonable expectation that Thrifty Med would pursue reinstatement

under Public Chapter 1070.

C. **Public Chapter 1070's Amendments to the Statutes at Issue in this Litigation Did Not Make the Case Moot.**

An additional question in the proceedings below was whether the

amendments contained in Public Chapter 1070 were material to the issues in the

case and would substantially alter the rights and obligations of the parties.  Thrifty

Med argued that when a law has been amended or repealed, actions for declaratory

or injunctive relief based on earlier versions of the law are generally moot.  Thrifty

Med's Memorandum in Support of Motion to Dismiss, R. 38, PageID # 334.  The

District Court, however, agreed with McKee that under Sixth Circuit authority, "any

change in law must be material and substantially alter the rights and obligations of

the parties in order to moot a case."  Memorandum and Order, R. 67, PageID # 797

(citing *Cam I, Inc. v. Louisville/Jefferson Cnty. Metro Gov't*, 460 F.3d 717, 720 (6th

Cir. 2006).  If a new statute is substantially similar to the old one and operates in

"the same fundamental way," the case is not moot.  *Id.*

The District Court summarized Thrifty Med's and McKee's respective

arguments regarding the materiality of the amendments contained in Public Chapter

1070 (*Id.*, PageId ## 798-799) but ultimately did not adjudicate this issue.  Instead, as discussed above, the District Court concluded that "[r]egardless of what any party believes to be the impact of PC 1070 on their prior positions," there could be no reasonable expectation that Thrifty Med would pursue reinstatement in the future.  *Id.*, PageID # 801.

In essence, the question is whether the 2022 amendments removed the harm to McKee.  They did not.  Regardless of whether Thrifty Med is likely to pursue reinstatement to the McKee network in the future, the amendments to the statutes at issue do not materially and substantially alter the rights and obligations of the parties.  Thrifty Med's claims for reinstatement have consistently been based on the original "any willing pharmacy" statute (Tenn. Code Ann. § 56-7-2359) and on Tenn. Code Ann. § 56-7-3120 (added by Public Chapter 569 in 2021).  Tenn. Code Ann. § 56-7-2359 was not amended at all by Public Chapter 1070.  Public Chapter 1070 basically split Tenn. Code Ann. § 56-7-3120(b) into two subsections, but Thrifty Med's claims for reinstatement are based on the statute's existing any willing provider provision now contained in Section 56-7-3120(b)(1) which was substantively unchanged by the 2022 amendments.

Although Thrifty Med argued that additional amendments obligated *PBMs* to allow patients and plan participants to use any licensed pharmacy and to allow any licensed pharmacy to participate in the PBMs' networks (*see* Tenn. Code Ann.

§ 56-7-3121),[27] the Legislature did not make these provisions applicable to "covered entities" such as McKee.  Even if these provisions were applicable, they would operate "in the same fundamental way" as the any willing pharmacy statutes at issue in the proceedings below.  The parties' fundamental arguments would remain the same, with Thrifty Med asserting that McKee must allow "any willing pharmacy" to participate in its plan network and McKee responding that a state law attempting to impose such a requirement on a self-funded ERISA plan is preempted.

Thrifty Med concedes Public Chapter 1070's attempt to make the Tennessee pharmacy legislation specifically applicable to ERISA plans.  Thrifty Med's Memorandum in Support of Motion to Dismiss, R. 38, PageID # 331.  This blatant attack on ERISA preemption certainly would not remove the harm to McKee, although it *would* make the amended law even more clearly preempted.

---

[27] Thrifty Med's Memorandum in Support of Motion to Dismiss, R. 38, PageID ## 331-332.

## CONCLUSION

McKee requests that the Court reverse the District Court's grant of Thrifty Med's Motion to Dismiss and remand this case to the District Court for adjudication on the merits.

Respectfully submitted,

CHAMBLISS, BAHNER & STOPHEL, P.C.

By:    *s/William H. Pickering*
    William H. Pickering (TN BPR #006883)
    Catherine S. Dorvil (TN BPR #034060)
    Liberty Tower – Suite 1700
    605 Chestnut Street
    Chattanooga, TN  37450
    Telephone: (423) 756-3000
    Email: wpickering@chamblisslaw.com
        cdorvil@chamblisslaw.com

*Attorneys for Plaintiff-Appellant*


OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
Mark E. Schmidtke
56 S. Washington Street, Suite 302
Valparaiso, IN 46383
Telephone: (219) 242-8668
Email: Mark.schmidtke@ogletree.com

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

The undersigned hereby certifies as follows:

1.      This brief complies with the type-volume limitations of Fed. R. App. P 32(a)(7)(B) because this brief contains 12,088 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Sixth Circuit Rule 32(b)(1).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in size 14-point Times New Roman.

This the 24th day of May, 2023.

CHAMBLISS, BAHNER & STOPHEL, P.C.

By:    s/William H. Pickering
        Counsel for Plaintiff-Appellant,
        McKee Foods Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of May, 2023, a copy of the foregoing Brief of Plaintiff-Appellant was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

CHAMBLISS, BAHNER & STOPHEL, P.C.

By:   s/William H. Pickering
Counsel for Plaintiff-Appellant,
McKee Foods Corporation

## ADDENDUM : <u>PLAINTIFF-APPELLANT'S DESIGNATION  OF RELEVANT DOCUMENTS</u>

Plaintiff-Appellant McKee Foods Corporation, pursuant to Sixth Circuit Rule 30(g), designates the following filings in the District Court's record as relevant documents:

### *McKee Foods Corporation v. State of Tennessee v. BFP, Inc. d/b/a Thrifty Med Plus Pharmacy*
### Case No. 1:21-cv-00279 (E.D. Tenn.)

| Date Filed | Record Entry No. | Description | Page ID# Range |
|---|---|---|---|
| 11/15/2021 | R.1 | Complaint | 1-39 |
| 12/22/21 | R.12 | Thrifty Med's Answer | 60-72 |
| 1/14/22 | R.16 | Rule 26(f) Discovery Plan | 79-81 |
| 4/12/22 | R.31 | McKee's Memorandum in Opposition to Intervenor's Motion to Dismiss | 130-151 |
| 5/23/22 | R.35 | McKee's Motion for Summary Judgment with Exhibits 1-2 | 173-253 |
| 5/23/22 | R.36 | Brief in Support of McKee's Motion for Summary Judgment with Exhibits 1-6 Regulatory/Statutory Exhibits Cited Herein: | 254-324 |
|  |  | Exhibit 1:  1998 Tenn. Laws Pub. Ch. 1033 (H.B. 2949) | 278-279 |
|  |  | Exhibit 2:  2001 Tenn. Laws Pub. Ch. 236 (S.B. 528) | 281-283 |
|  |  | Exhibit 4: Tenn. Comm. Dept. Bulletin 21-01 (July 8, 2021) | 299-300 |

| Date Filed | Record Entry No. | Description | Page ID# Range |
|---|---|---|---|
| | | Exhibit 5:  HB2661/SB2458 | 302-310 |
| 5/24/22 | R.37 | Thrifty Med's Motion to Dismiss | 325-327 |
| 5/24/22 | R.38 | Memorandum in Support of Thrifty Med's Motion to Dismiss with Exhibits 1-2 | 328-355 |
| 5/31/22 | R.39 | Supplement in Support of Thrifty Med's Motion to Dismiss with Exhibit 1<br><br>Regulatory/Statutory Exhibit Cited Herein:<br><br>Exhibit 1:  Public Chapter 1070 | 356-365<br><br><br><br><br><br>359-365 |
| 6/27/22 | R.44 | Thrifty Med's Response in Opposition to McKee's Motion for Summary Judgment with Exhibit 1 | 385-413 |
| 6/28/22 | R.45 | McKee's Brief in Opposition to Thrifty Med's Motion to Dismiss with Exhibits 1-5 | 414-460 |
| 7/5/22 | R.47 | McKee's Reply Brief in Support of its Motion for Summary Judgment | 480-499 |
| 8/15/22 | R.53 | McKee's Brief in Opposition to Thrifty Med's Motion to Stay Discovery with Exhibits 1-3 | 535-578 |
| 11/18/22 | R.62 | McKee's Supplemental Brief in Opposition to Thrifty Med's Motion to Dismiss with Exhibit 1 | 646-717 |
| 2/3/23 | R.67 | Memorandum Opinion and Order | 794-802 |
| 3/1/23 | R.68 | Notice of Appeal | 803-804 |
| 3/6/23 | R.70 | Transcript of Oral Argument | 808-864 |

## STATUTORY ADDENDUM

Public Chapter No. 569 (2021), below, is cited herein and was not reproduced in full in the electronic record.

[CONTINUED ON NEXT PAGE]



## State of Tennessee

## PUBLIC CHAPTER NO. 569

### HOUSE BILL NO. 1398

**By Representatives Helton, Clemmons, Smith, Rudder, Faison, Bricken, Lafferty, Powers, Sparks, Mannis, Littleton, Grills, Warner, Hurt, Terry, Whitson, Carringer, Kumar, Moon, Eldridge, Hall, Hakeem, Ramsey, Tim Hicks, Mitchell, Cepicky, Hawk, Sherrell, Griffey, Casada, Weaver, Alexander, Moody, Crawford, Reedy, Hodges, Russell, Cochran, Leatherwood, Jerry Sexton, Wright, Calfee, Farmer, Garrett, Freeman, Beck, Lynn, Zachary, Jernigan, Windle, Powell, Curtis Johnson, Darby, Rudd, Doggett, Ogles, Williams, Haston, Vaughan, Howell, Ragan, Harris, Shaw, Towns, Hardaway, Chism, White, Marsh, Carr, Gant, Keisling, Gloria Johnson, Lamberth, Todd, Miller, Camper**

#### Substituted for: Senate Bill No. 1617

**By Senators Reeves, Bell, Yager, Haile, Swann, Briggs, Campbell, Jackson**

AN ACT to amend Tennessee Code Annotated, Title 4; Title 56 and Title 71, relative to pharmacy benefits.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Tennessee Code Annotated, Title 56, Chapter 7, Part 31, is amended by adding the following as a new section:

(a) A health insurance issuer, managed health insurance issuer as defined in § 56-32-128(a), pharmacy benefits manager, or other third-party payer shall not:

(1) Reimburse a 340B entity for pharmacy-dispensed drugs at a rate lower than the rate paid for the same drug by national drug code number to pharmacies that are not 340B entities;

(2) Assess a fee, chargeback, or adjustment upon a 340B entity that is not equally assessed on non-340B entities;

(3) Exclude 340B entities from its network of participating pharmacies based on criteria that is not applied to non-340B entities; or

(4) Require a claim for a drug by national drug code number to include a modifier to identify that the drug is a 340B drug.

(b) With respect to a patient eligible to receive drugs subject to an agreement under 42 U.S.C. § 256b, a pharmacy benefits manager, or third party that makes payment for those drugs, shall not discriminate against a 340B entity in a manner that violates § 56-7-2359 or otherwise prevents or interferes with the patient's choice to receive those drugs from the 340B entity.

(c) Notwithstanding § 56-7-1005, this section does not apply to:

(1) The TennCare program administered under the Medical Assistance Act of 1968, compiled in title 71, chapter 5, part 1, or a successor Medicaid program;

(2) The CoverKids Act of 2006, compiled in title 71, chapter 3, part 11, or a successor program; or

(3) The prescription drug program described in chapter 57 of this title, or a successor program.

(d) As used in this section:

HB1398

(1) "340B entity" means a covered entity participating in the federal 340B drug discount program, as defined in section 340B of the Public Health Service Act, 42 U.S.C. § 256b, including the entity's pharmacy or pharmacies, or any pharmacy or pharmacies under contract with the 340B covered entity to dispense drugs on behalf of the 340B covered entity; and

(2) "National drug code number" means the unique national drug code number that identifies a specific approved drug, its manufacturer, and its package presentation.

SECTION 2. Tennessee Code Annotated, Title 56, Chapter 7, Part 31, is amended by adding the following as a new section:

(a) A pharmacy benefits manager or a covered entity shall not require a person covered under a pharmacy benefit contract, that provides coverage for prescription drugs, including specialty drugs, to pay an additional fee, higher copay, higher coinsurance, second copay, second coinsurance, or other penalty when obtaining prescription drugs, including specialty drugs from a contracted pharmacy.

(b) A pharmacy benefits manager or a covered entity shall not interfere with the patient's right to choose a contracted pharmacy or contracted provider of choice in a manner that violates § 56-7-2359 or by other means, including inducement, steering, or offering financial or other incentives.

SECTION 3. Tennessee Code Annotated, Title 56, Chapter 7, Part 32, is amended by adding the following as a new section:

(a) Notwithstanding a law to the contrary, a pharmacy benefits manager or a covered entity shall base the calculation of any coinsurance or deductible for a prescription drug or device on the allowed amount of the drug or device. For purposes of this section, coinsurance or deductible does not mean or include copayments.

(b) Notwithstanding a law to the contrary, a pharmacy benefits manager shall not charge a covered entity an amount greater than the reimbursement paid by a pharmacy benefits manager to a contracted pharmacy for the prescription drug or device.

(c)

(1) Notwithstanding a law to the contrary, and except as otherwise provided in this subsection (c), a pharmacy benefits manager shall not reimburse a contracted pharmacy for a prescription drug or device an amount that is less than the actual cost to that pharmacy for the prescription drug or device.

(2)

(A) Subdivision (c)(1) does not apply to a pharmacy benefits manager when utilizing a reimbursement methodology that is identical to the methodology provided for in the state plan for medical assistance approved by the federal centers for medicare and medicaid services.

(B) If a pharmacy benefits manager utilizes a reimbursement methodology that is identical to the methodology provided for in the state plan for medical assistance approved by the federal centers for medicare and medicaid services, then the pharmacy benefits manager shall establish a process for a pharmacy to appeal a reimbursement paid at average acquisition cost and receive an adjusted payment by providing valid and reliable evidence that the reimbursement does not reflect the actual cost to the pharmacy for the prescription drug or device.

(3)

(A) Subdivision (c)(1) does not apply to a covered entity or pharmacy benefits manager that establishes a clearly defined process

2

HB1398

through which a pharmacy may contest the actual reimbursement received for a particular drug or medical product or device.

(B) If a pharmacy chooses to contest the actual reimbursement cost for a particular drug or medical product or device, then the pharmacy has the right to designate a pharmacy services administrative organization or other agent to file and handle its appeal of the actual reimbursement.

(4) A covered entity's or pharmacy benefits manager's appeals process must be approved by the commissioner of commerce and insurance and comply with the timing and notice requirements of § 56-7-3108.

(d) As used in this section, "allowed amount" means the cost of a prescription drug or device after applying pharmacy benefits manager or covered entity pricing discounts available at the time of the prescription claim transaction.

SECTION 4. Tennessee Code Annotated, Title 56, Chapter 7, Part 32, is amended by adding the following as a new section:

A pharmacy benefits manager has a responsibility to report to the plan and the patient any benefit percentage that either are entitled to as a benefit as a covered person.

SECTION 5. Tennessee Code Annotated, Title 56, Chapter 7, Part 32, is amended by adding the following as a new section:

(a)

(1) A covered entity shall, upon request of an enrollee, enrollee's healthcare provider, or authorized third party, furnish the cost, benefit, and coverage data described in subsection (b) to the enrollee, the enrollee's healthcare provider, or an authorized third party, and shall ensure that the data is:

(A) Accurate as of the most recent change to the data that was made prior to the date of request;

(B) Provided in real time; and

(C) Provided in the same format in which the request is made.

(2)

(A) A request for coverage data must be in a format that uses established industry content and transport standards as published by the following:

(i) A standard developing organization that is accredited by the American National Standards Institute, including, but not limited to, the National Council for Prescription Drug Programs, ASC X12, and Health Level 7; or

(ii) A relevant governing entity of this state or the federal government, including, but not limited to, the federal centers for medicare and medicaid services and the office of national coordinator for health information technology.

(B) The following are not acceptable formats for requests for coverage data under this section:

(i) A facsimile; or

(ii) Use of a proprietary payor or patient portal or other electronic form.

3

61

HB1398

(b) A covered entity that receives a request for data that complies with subsection (a) shall provide the following data for each drug covered under the enrollee's health plan:

(1) The enrollee's eligibility information for the drug;

(2) A list of any clinically appropriate alternatives to drugs covered under the enrollee's health plan;

(3) Cost-sharing information for the drugs and the clinically appropriate alternatives; and

(4) Applicable utilization management requirements for the drugs or clinically appropriate alternatives, including prior authorization, step therapy, quantity limits, and site-of-service restrictions.

(c) A covered entity that furnishes data as provided in subsection (b) shall not:

(1) Restrict, prohibit, or otherwise hinder a healthcare provider from communicating or sharing with the enrollee or enrollee's authorized representative:

(A) The data set forth in subsection (b);

(B) Additional information on lower-cost or clinically appropriate alternative drugs, whether or not the drugs are covered under the enrollee's plan; or

(C) Additional payment or cost-sharing information that may reduce the patient's out-of-pocket costs, such as cash price or patient assistance, and support programs sponsored by a manufacturer, foundation, or other entity;

(2) Except as may be required by law, interfere with, prevent, or materially discourage access to, exchange of, or the use of the data set forth in subsection (b), including:

(A) Charging fees;

(B) Failing to respond to a request at the time made when such a response is reasonably possible;

(C) Implementing technology in nonstandard ways; or

(D) Instituting requirements, processes, policies, procedures, or renewals that are likely to substantially increase the complexity or burden of accessing, exchanging, or using the data; or

(3) Penalize a healthcare provider for:

(A) Disclosing the information described in subdivision (c)(1) to an enrollee; or

(B) Prescribing, administering, or ordering a clinically appropriate or lower-cost alternative drug.

SECTION 6. Sections 1-4 of this act take effect July 1, 2021, the public welfare requiring it. Section 5 of this act takes effect January 1, 2022, the public welfare requiring it.

4

HOUSE BILL NO.   1398

PASSED:   May 4, 2021

CAMERON SEXTON, SPEAKER
HOUSE OF REPRESENTATIVES

RANDY MCNALLY
SPEAKER OF THE SENATE

APPROVED this   20th   day of   May   2021

BILL LEE, GOVERNOR