No. 23-5170

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MCKEE FOODS CORPORATION,

Plaintiff-Appellant,

v.

BFP, INC d/b/a THRIFTY MED PLUS PHARMACY,

Defendant-Appellee,

v.

STATE OF TENNESSEE,

Intervenor, Appellee.

On Appeal from the United States District Court,
Eastern District of Tennessee, Chattanooga Division
Case No. 1:21-cv-00279 – Hon. Charles E. Atchley, Jr., District Judge

**BRIEF OF APPELLEE
BFP, INC d/b/a THRIFTY MED PLUS PHARMACY**

Russell W. Gray
Derek W. Mullins
Ryan A. Freeman
BAKER, DONELSON, BEARMAN,
CALDWELL, AND BERKOWITZ, PC
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
(423) 756-2010
rgray@bakerdonelson.com
dmullins@bakerdonelson.com
rfreeman@bakerdonelson.com

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST</u>

Pursuant to 6th Cir. R. 26.1, Defendant-Appellee BFP, Inc. d/b/a Thrifty Med Plus Pharmacy ("***Thrifty Med***") makes the following disclosures:

1.      Is Thrifty Med a subsidiary or affiliate of a publicly owned corporation? No.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

No.

Disclosure and certification made this 23rd day of June, 2023.

/s/ Russell W. Gray
Counsel for Thrifty Med

i

# **TABLE OF CONTENTS**

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST ................................................................................................... i

TABLE OF AUTHORITIES ...................................................................... iv

STATEMENT OPPOSING ORAL ARGUMENT ..................................... vi

STATEMENT OF ISSUES PRESENTED FOR REVIEW ........................1

STATEMENT OF THE CASE.....................................................................2

I.     Introduction...................................................................................2

II.    Factual & Procedural Background ...............................................5

       A.    McKee, PBMs, and Thrifty Med .......................................5

       B.    McKee's Removal of Thrifty Med from its Plan ..............7

       C.    PC 569 ...............................................................................8

       D.    Litigation ...........................................................................9

       E.    PC 1070 .............................................................................11

       F.    Thrifty Med's Motion to Dismiss, Discovery, and Subsequent Proceedings ....................................................................................12

       G.    The District Court's Dismissal..........................................15

SUMMARY OF ARGUMENT ..................................................................16

ARGUMENT ..............................................................................................17

I.     Applicable Standards of Review .................................................17

II.    The District Court Correctly Determined McKee's Claims Against Thrifty Med Are Moot....................................................................................18

III.   The "Voluntary Cessation Doctrine" Did Not Bar the District Court's Dismissal of McKee's Moot Claims ..............................................23

IV.    A Remand of this Action Would be Ineffectual ................................................28

CONCLUSION ......................................................................................................29

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ...............................31

CERTIFICATE OF SERVICE ...............................................................................32

DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS ..................33

## TABLE OF AUTHORITIES

## Cases

*Adams v. Bowater, Inc.*, 313 F.3d 611 (1st Cir. 2002) .........25, 26, 27, 28

*Adarand Constuctors, Inc. v. Slater*, 528 U.S. 216 (2000)......................21

*AmSouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004)............................20

*Cartwright v. Garner*, 751 F.3d 752 (6th Cir. 2014)..............................17

*City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283 (1982)............24

*City of Parma, Ohio v. Cingular Wireless, LLC*, 278 Fed. Appx. 636 (6th Cir. 2008) ................................................................................19, 26

*Craft v. United States,* 233 F.3d 358 (6th Cir.2000) ..............................18

*Fieger v. Michigan Supreme Ct.*, 553 F.3d 955 (6th Cir. 2009) ............19

*Golden v. Zwickler,* 394 U.S. 103 (1969)................................................26

*Hanrahan v. Mohr*, 905 F.3d 947 (6th Cir. 2018)............................19, 20

*Los Angeles Cty. v. Davis*, 440 U.S. 625 (1979) ....................................24

*Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548 (6th Cir. 2021) ....................................................................................................21

*Midwest Media Property, L.L.C. v. Symmes Tp., Ohio,* 503 F.3d 456 (6th Cir.2007) ..........................................................................................26

*Natl. Wildlife Fedn. v. U.S. Army Corps of Engineers*, 404 F. Supp. 2d 1015 (M.D. Tenn. 2005) .....................................................................24

*Schepp v. Fremont County,* 900 F.2d 1448 (10th Cir.1990) .................26

*Southwest Williamson County Community Ass'n, Inc. v. Slater*, 243 F.3d 270 (6th Cir.2001).........................................................................17, 18

iv

*TCI/TKR Cable v. Johnson*, 30 Fed. Appx. 581 (6th Cir. 2002) .....passim

*United States v. Generix Drug Corporation,* 460 U.S. 453 (1983) ........24

*W. World Ins. Co. v. Hoey*, 773 F.3d 755 (6th Cir. 2014) ......................20

**Statutes**

28 U.S.C. § 2201 ...................................................................................18

28 U.S.C. § 2201(a) ........................................................................18, 19

Tenn. Code Ann. § 56-7-2359 .....................................................8, 9, 10

Tenn. Code Ann. § 56-7-3101 ...............................................................8

Tenn. Code Ann. § 56-7-3102(1) (2021) ..............................................8

Tenn. Code Ann. § 56-7-3102 .......................................................12, 13

Tenn. Code Ann. § 56-7-3120 .........................................8, 12, 13, 29

Tenn. Code Ann. § 56-7-3121 .......................................................12, 29

**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................................17

**Constitutional Provisions**

U.S. Const. art. III .........................................................................18, 19

## <u>STATEMENT OPPOSING ORAL ARGUMENT</u>

Defendant-Appellee BFP, Inc. d/b/a Thrifty Med Plus Pharmacy ("***Thrifty Med***") disagrees with Plaintiff-Appellant McKee Food Corporation ("***McKee***") that this case would benefit from oral argument. The issues presented are straight-forward, and the parties have extensively briefed them, both here and below. As discussed herein, the District Court's Memorandum Opinion & Order noted the factual background of the case, the developments in Tennessee law since its filing, the dismissal of the administrative complaints at issue in McKee's original request for relief, and the evidence the parties presented concerning what it contends to be a potential "likelihood" that Thrifty Med will pursue reinstatement in the future. [*Memorandum Order & Opinion*, R. 67, Page ID # 794-802]. This Court has full access to the record, including evidence and filings cited in the briefing and the transcript of oral argument conducted on the Motion to Dismiss at issue. Given the abundance of written information available in the record and associated cost, oral argument would be an inefficient use of time and resources for the Court and the parties.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court erred in dismissing McKee's claims against Thrifty Med for lack of subject matter jurisdiction based on the lack of an actual, active case in controversy.

## STATEMENT OF THE CASE

### I.     Introduction

This appeal arises out of a dispute rendered moot following changes to the statutory law at issue and the dismissal of the administrative complaints at issue in this action for declaratory, injunctive, or other equitable relief. In June 2019, now more than four years ago, McKee instructed its pharmacy benefits manager ("**PBM**"), MedImpact Healthcare Systems, Inc. ("***MedImpact***"), to remove Thrifty Med from the list of approved pharmacies under McKee's Health Plan[1] following some alleged billing issues that Thrifty Med has viewed as an administrative misunderstanding. During the next two years, Thrifty Med sought reinstatement and attempted to reach an amicable resolution with McKee, but those efforts proved unsuccessful.

In 2021, the State of Tennessee enacted new "any willing pharmacy" statutes as part of what became known as Public Chapter 569 ("***PC 569***"). PC 569 required PBMs to permit the participation of pharmacies outside a network's plan so long as the pharmacies agreed to abide by the terms of that plan. Thrifty Med tried to utilize these statutory provisions by filing claims with MedImpact for services rendered to McKee Plan members. MedImpact denied those claims, and Thrifty Med responded by filing three (3) administrative complaints with the Tennessee Department of

---

[1] The "Health Plan" or the "Plan" are defined below.

2

Commerce & Insurance ("**TDCI**") in September and October 2021. Thrifty Med later received correspondence from TDCI dismissing those complaints at least in part based on TDCI's conclusion that PC 569 did not apply in this situation because McKee's Plan is governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("**ERISA**"). While the last of those complaints was pending, McKee filed its Complaint for Declaratory Judgment and Injunctive or Otherwise Appropriate Equitable Relief on November 15, 2021. Throughout the course of this litigation, Thrifty Med did not file any additional complaints with the TDCI or seek through a counterclaim or otherwise declaratory or injunctive relief of its own against either McKee or MedImpact.

In April 2022, the State of Tennessee further overhauled its "any willing pharmacy" statutory scheme with Public Chapter 1070 ("**PC 1070**"), which, *inter alia*, clarified that the scheme applies to plans governed by ERISA, removed portions of the codified PC 569, and created entire new restrictions on PBMs (not the plan itself) from excluding pharmacies from networks. The new statutory scheme was to become effective on January 1, 2023.

With the law at issue being changed and by now all of Thrifty Med's administrative complaints with the TDCI being dismissed, Thrifty Med saw the obvious: the pending litigation against it no longer served any functional or effective purpose. It then stipulated that it would no longer pursue reinstatement into the

3

McKee Plan under the existing Tennessee "Any Willing Pharmacy" laws, including Tennessee Code Annotated §§ 56-7-3102 and 56-7-3120 and moved to dismiss McKee's claims against it on May 24, 2022 based on the lack of an actual case or controversy. Counsel for Thrifty Med further specified the company's disinterest in reinstatement during a hearing held on November 30, 2022. Examining these facts and circumstances, McKee's alleged evidence to the contrary, and applicable precedent, the District Court dismissed McKee's lawsuit for lack of subject matter jurisdiction based on the lack of an actual case or controversy. This appeal followed.

This case no longer presents an actual, active case or controversy, and any decision on the merits would merely serve as an impermissible and ineffective advisory opinion. The TDCI dismissed Thrifty Med's administrative complaints, and PC 569—the statutory provisions at issue in those complaints as well as McKee's lawsuit—has been materially and significantly amended. Similarly, Thrifty Med has not submitted and has no present intent or plan to submit any complaints or claims demanding the chance to participate in McKee's Plan under the provisions of PC 1070. Absent active administrative complaints or direct efforts by Thrifty Med to obtain reinstatement to McKee's list of approved providers, the dispute between these parties is moot, and this Court should affirm the District Court's Memorandum Opinion and Order dismissing McKee's claims.

4

## II.    Factual & Procedural Background

### A.    McKee, PBMs, and Thrifty Med

McKee is a corporation headquartered in Collegedale, Hamilton County, Tennessee, which specializes in the manufacture and marketing of "Little Debbie" snack cakes and other food products. [*McKee's Complaint for Declaratory Judgment and Injunctive or Otherwise Appropriate Equitable Relief* ("**Complaint**"), R. 1, Page ID # 1-2; *Exhibit 1 to Thrifty Med's Reply in Additional Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Summary Judgment*, R. 46-1, Page ID # 474-77].[2] McKee provides an Employees Health and Supplemental Benefits Plan (the "**McKee Plan**" or the "**Plan**") to its employees, which is governed by ERISA and includes, *inter alia*, a Prescription Drug Program with a list of preferred "in-network pharmacies." [*McKee's Complaint*, R. 1, Page ID # 1-3]. The Prescription Drug Program enables employees to receive favorable benefits when filling prescriptions using these "in-network" providers. [*Id.*]. The Plan and the Prescription Drug Program purportedly provide benefits to thousands of employees and their dependents in multiple jurisdictions across the country, including Hamilton County. [*Declaration of Angela Sharps*, R. 35-2, Page ID # 191].

---

[2] For the purpose of this appellate memorandum, Thrifty Med assumes without admitting that the facts cited in this memorandum from the Complaint are true.

McKee operates the Plan's Prescription Drug Program with the assistance of PBMs, which provide administrative services such as claim processing and payment. [*Id.* at Page ID # 191-92; *McKee's Complaint*, R. 1, Page ID # 5]. Prior to January 2019, Magellan Rx Management ("***Magellan***") served as McKee's PBM. [*Id.*]. MedImpact succeeded Magellan, and, upon information and belief, continues to serve as McKee's PBM. [*Id.*].

Thrifty Med is an independent, locally owned pharmacy in Ooltewah, Hamilton County, Tennessee. [*Declaration of Greg Bohannon*, R. 44-1, Page ID # 410-11, 413]. Thrifty Med caters to and serves residents of nearby neighborhoods and apartment complexes as well as employees of multiple manufacturing and logistical companies in the area. [*Declaration of Kevin Spicer*, R. 45-2, Page ID #447; *Thrifty Med's Reply in Additional Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Summary Judgment*, R. 46, Page ID # 467].

Like many other independent pharmacies, Thrifty Med is a member of a pharmacy services administrative organization ("***PSAO***"), a type of organization intended to help independent pharmacies remain competitive with national chains by collectively negotiating pharmacy network contracts with insurance companies, plan sponsors, and/or their PBMs. [*Declaration of Greg Bohannon*, R. 44-1, Page ID # 410-11, 413]. Thrifty Med is a member of a PSAO operated by AlignRx, LLC

6

("***AlignRx***"). [*Id*.]. AlignRx maintains a MedCare Pharmacy Network Agreement with MedImpact, which includes commercial networks associated with McKee's Prescription Drug Program. [*Id*.].

### B.    McKee's Removal of Thrifty Med from its Plan

In 2018, a McKee Plan member lodged a complaint against Thrifty Med concerning a billing discrepancy. [*McKee's Complaint*, R. 1, Page ID # 5]. Magellan conducted an audit of Thrifty Med to investigate the circumstances surrounding that complaint. [*Id*.; *Declaration of Angela Sharps*, R. 35-2, Page ID # 192-93]. McKee and MedImpact received the report from Magellan late spring 2019, and McKee directed MedImpact to remove Thrifty Med from the Prescription Drug Program's list of approved pharmacies effective July 1, 2019. [*Id*.].

Magellan filed its own complaint against Thrifty Med with the Tennessee State Board of Pharmacy, but the board dismissed the allegations by a unanimous vote. [*Declaration of Greg Bohannon*, R. 33-1, Page ID # 162-63]. In subsequent routine audits conducted by multiple PBMs, including MedImpact, and the State of Tennessee, Thrifty Med received exemplary reports. [*Id*.].

Thrifty Med disputed the findings listed in Magellan's audit report and sought reinstatement to the Prescription Drug Program's list of preferred pharmacies through a series of letters and in-person meetings. [*Id*.; *McKee's Complaint*, R. 1, Page ID # 6-7]. Thrifty Med received support from McKee's own employees, many

of whom were long-time customers of the pharmacy. [*Declaration of Greg Bohannon*, R. 33-1, Page ID # 162-63]. These communications, however, did not result in Thrifty Med's reinstatement.

### C.    PC 569

In May 2021, the Tennessee General Assembly passed and Governor William (Bill) Lee signed into law PC 569. [*Statutory Addendum to Appellant's Brief*, Dkt. 21, p. 68-73]. PC 569 revised Tennessee's "any willing pharmacy" statutory scheme, codified at Tenn. Code Ann. § 56-7-2359 and, more particularly, 56-7-3101, *et seq*. Section 1 of PC 569 ultimately became Tennessee Code Annotated § 56-7-3120 (2021), which prohibited PBMs and "covered entities" from interfering with "a patient's right to choose a contracted pharmacy or contracted provider of choice in a manner that violates § 56-7-2359 or by other means, including inducement, steering, or offering financial or other incentives." [*See Statutory Addendum to Appellant's Brief*, Dkt. 21, p. 68-73]. At the time, "covered entities" were defined as health coverage plans, self-insured entities, and "all other corporations, entities, or persons, or an employer, labor union, or other group of persons organized in the state that provides health coverage to covered individuals who are employed or reside in the state." Tenn. Code Ann. § 56-7-3102(1) (2021). The statute, however, omitted any specific reference to ERISA plans. *Id*. On July 8, 2021, however, the TDCI issued a bulletin stating in part that a "covered entity" "includes 'self-insured

8

entities,' which would include ERISA plans" and that "[n]o exclusions in the PBM laws were carved out to exclude plans currently regulated by ERISA." [*Bulletin 21-01*, R. 36-4, Page ID #299-300].

After PC 569's provisions became effective on July 1, 2021 and the TDCI issued its July 8, 2021 bulletin, Thrifty Med sought to utilize the amended "any willing pharmacy" statutes to provide pharmaceutical services to McKee Plan members and receive compensation from MedImpact. [*McKee's Complaint*, R. 1, Page ID # 6]. Thrifty Med submitted claims to MedImpact for payment, but MedImpact denied them, prompting Thrifty Med to file three (3) administrative complaints with the TDCI dated September 13, October 12, and October 18, 2021. [*Declaration of Jennifer Johnson*, R. 35-1, Page ID # 176-89]. The TDCI, however, summarily dismissed the administrative complaints via letters dated October 27, November 2, and November 30, 2021. [*Declaration of Thrifty Med*, R. 38-2, Page ID # 348-55].

### D.    Litigation

McKee filed its Complaint on November 15, 2021. [*McKee's Complaint*, R. 1, Page ID # 1-44]. McKee's Complaint sought declaratory, injunctive, and otherwise equitable relief, and contained three counts essentially asking the District Court to determine whether ERISA preempted PC 569 and Tennessee Code Annotated § 56-7-2359, which served as the bases for Thrifty Med's administrative

complaints. [*McKee's Complaint*, R. 1, Page ID # 6-13]. This preemption issue first depended on the District Court's interpretation of PC 569 and § 56-7-2359. [*See id.*, Page ID # 8 (indicating in subpart (b) that McKee seeks the ERISA preemption ruling "[t]o the extent Tennessee Code Annotated §56-7-2359 and/or Public Chapter No. 569 purport to regulate [McKee's] discretion to determine which pharmacies are in the [Plan]")].

In response to McKee's Complaint, Thrifty Med denied in its Answer McKee's allegations stemming from the disputed Magellan audit report and asserted its belief that the provisions of PC 569 required PBMs to allow pharmacies to participate in prescription drug programs. [*Answer*, R. 12, Page ID # 68]. Thrifty Med did not, however, file any counterclaims against McKee or seek declaratory relief of its own. [*Id.*].

During the parties' initial planning meeting, both sides agreed to present what they understood to be the "two dispositive legal questions" in an early dispositive motion to be filed by McKee. [*Report of 26(f) Planning Meeting*, R. 16, Page ID # 79-80]:

> (1) To the extent [Tenn. Code Ann.] § 56-7-2359 and/or Public Chapter 569 purport to regulate Plaintiff's discretion to determine which pharmacies are in its prescription drug program network, is the state law preempted by ERISA?

10

    (2) Whether [Tenn. Code Ann.] § 56-7-2359 exempts self-funded ERISA plans like [McKee's] Health Plan from its provisions and, if so, whether Public Chapter 569 revises or revokes that exemption.

[*Id.*]

### E.    PC 1070

During the pendency of the litigation at issue, Thrifty Med's owners, Greg and Julie Bohannon, became aware of additional proposed amendments to Tennessee's "any willing pharmacy" statutory scheme and sought to campaign for the passage and enactment of what would later become PC 1070. [*Collective Exhibit 1 to Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss*, R. 62-1, Page ID # 652-64, 667, 671-700, 707-11]. The Bohannons advocated for PC 1070 to ensure patient choice and to curtail what they perceived to be the undue influence and detrimental impact of PBMs on patient rights and the ability of independent pharmacies like Thrifty Med to remain competitive with larger chains. [*See id.*]. The Bohannons did not, however, seek to use the prospective amendments as a way of collaterally attacking McKee, and they actively encouraged others to focus on supporting the passage of additional PBM reform in Tennessee. [*See e.g., id.*, Page ID # 711 (stating in support of prospective amendments that billboards reading "Patients Deserve Choice" referred to broader patient choice rights and were not specifically directed to McKee Foods)].

On April 27, 2022, the Tennessee General Assembly passed what became PC 1070, and Governor Lee signed it a few weeks thereafter. PC 1070's amendment, *inter alia*, further clarified that the "any willing pharmacy" statutory scheme's rules for PBMs apply to plans governed by ERISA. *See* Tenn. Code Ann. § 56-7-3102. PC 1070 also made significant other changes to the Tennessee Any Willing Pharmacy laws.  For instance, it removed the language "or by other means, including inducement, steering, or offering financial or other incentives" from § 56-7-3120(b), which was specifically at issue in the underlying case. It also added entirely new and extensive provisions restricting PBMs from excluding pharmacies from certain plans or imposing certain charges on pharmacies related to network choices. *See* Tenn. Code Ann. § 56-7-3121 (2023).

### F.    Thrifty Med's Motion to Dismiss, Discovery, and Subsequent Proceedings

Pursuant to the parties' agreement, McKee moved for summary judgment on May 23, 2022. [*Plaintiff's Motion for Summary Judgment*, R. 35, 36, Page ID # 173-324]. In light of recent legislative developments, the TDCI's dismissal of its administrative complaints, and its disinterest in resuming business relations with McKee in light of its hostility toward Thrifty Med throughout the dispute and litigation, Thrifty Med filed a competing Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Summary Judgment ("Motion to

12

Dismiss") on May 24, 2022. [*Thrifty Med's Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Summary Judgment*, R. 37, 38, 39, Page ID # 325-365]. In support, Thrifty Med submitted a declaration from Greg Bohannon, stipulating that Thrifty Med would no longer pursue reinstatement into the McKee Plan under the existing Tennessee "Any Willing Pharmacy" laws, including Tennessee Code Annotated §§ 56-7-3102 and 56-7-3120. [*Declaration and Stipulation of Thrifty Med*, R. 38-2, Page ID # 349].

McKee reacted negatively to Thrifty Med's declaration and almost immediately went on the offensive. Despite the fact multiple dispositive motions were pending, McKee propounded requests for admission and requests for production of documents on Thrifty Med. [*Thrifty Med's Responses to Plaintiff's First Set of Requests for Admission*, R. 53-1, Page ID # 551-561]. McKee pointedly asked Thrifty Med to admit that it would not pursue reinstatement under PC 1070, but Thrifty Med indicated it could not conclusively stipulate that it would ***never*** seek reinstatement in the future under any circumstances. [*Id.*, Page ID # 558].

After months of burdensome and time-intensive written discovery, the District Court held a hearing on McKee's Motion for Summary Judgment and Thrifty Med's Motion to Dismiss. [*Transcript of Oral Argument*, R. 70, Page ID # 808-864].[3]

---

[3] Intervenor-Appellee the State of Tennessee filed a separate Motion to Dismiss for Lack of Jurisdiction. [*Motion to Dismiss for Lack of Jurisdiction*, R. 27, Page ID # 104-107].

During the hearing, counsel for Thrifty Med explained that it was not possible to guarantee that Thrifty Med would *never* seek reinstatement into the McKee Plan because Thrifty Med cannot know of all circumstances that may arise in the future. [*Id*., Page ID # 838-39]. Thrifty Med's counsel went on to explain multiple reasons why Thrifty Med would choose not to seek reinstatement again into the McKee Plan, including because of the breakdown of the parties' relationship through litigation and Thrifty Med's lack of desire to work with McKee again and that Thrifty Med may not have the capacity to serve McKee members thanks to the volume of business it built back following the pharmacy's removal from McKee's network. [*Id*., Page ID # 839-40]. In response to McKee's frustrations relating to Thrifty Med's inability to categorically stipulate it will never potentially explore reinstatement, the District Court pointedly noted all three of Thrifty Med's administrative complaints were dismissed in 2021 and expressed concern McKee was asking Thrifty Med to speculate about whether it would ***ever*** seek reinstatement in the future. [*Id*., Page ID # 844-46]. Counsel for Thrifty Med responded:

> MR. GRAY: I want to be clear on that. And I also want to be clear there's been, you know, questions about [Thrifty Med's Responses to McKee's Requests for Admissions]. And…there's no obligation for the Court to predict the future, but I can inform the Court there is no current intent or current plan by Thrifty Med to seek reinstatement under [PC 1070]. I can just – I can make that representation to the Court.

[*Id*., Page ID # 856].

14

**G.    The District Court's Dismissal**

On February 3, 2023, the District Court entered its Memorandum Opinion and Order granting Thrifty Med's Motion to Dismiss. [*Memorandum Opinion and Order*, R. 67, Page ID # 794-802]. The District Court noted McKee's admission that the harm it sought to address with its declaratory judgment action—that is, the allegations contained in Thrifty Med's administrative complaints that McKee violated PC 569 by restricting Thrifty Med's participation in McKee's Prescription Drug Program—were addressed and dismissed by the TDCI. [*Id*., Page ID # 800]. The District Court further noted that Thrifty Med has not pursued any further administrative or judicial remedy against McKee, and McKee has acknowledged as much. [*Id*.] The District Court additionally recognized the stipulations in the court filings and hearings regarding Thrifty Med not seeking reinstatement under PC 1070. [*Id*, Page ID # 801]. Finally, the Court noted that, while McKee presented evidence concerning Thrifty Med's lobbying efforts to ensure the passage of PC 1070 and its advertisements to customers in the area, these efforts were not enough to establish a reasonable likelihood of a continuing harm to McKee. [*Id*., Page ID # 801-02]. Applying these facts and conclusions to this Court's precedent, including a distinctively similar set of procedural facts presented in *TCI/TKR Cable v. Johnson*, 30 Fed. Appx. 581 (6th Cir. 2002), the District Court concluded the dispute between

15

McKee and Thrifty Med is moot and no longer presents an actual, active case in controversy. [*Id*].

On March 1, 2023, McKee filed its Notice of Appeal. [*Notice of Appeal*, R. 68, Page ID # 803-804].

## SUMMARY OF ARGUMENT

The District Court did not err in dismissing McKee's claims for lack of subject matter jurisdiction. The claims presented in McKee's Complaint were specifically predicated on statutory language put in place by PC 569 in 2021 and three administrative complaints Thrifty Med filed with the TDCI the same year. That statutory language, however, was substantively amended by PC 1070, and PC 1070's language controls questions concerning the applicability of Tennessee's "any willing pharmacy" statutory scheme. Similarly, the administrative complaints Thrifty Med filed in 2021 based on PC 569 were summarily dismissed, and Thrifty Med has not filed any additional administrative complaints or judicial actions demanding to participate in McKee's Plan or provide pharmaceutical services to its members. Despite McKee's assertions to the contrary, the District Court examined McKee's purported evidence and conjecture-filled arguments concerning Thrifty Med's future plans but determined that evidence was not enough to establish a reasonable likelihood Thrifty Med would seek reinstatement under PC 1070. This was not "clear error." This Court should not disturb the District Court's decision and should instead

16

permit the parties to move forward with their respective business ventures. The District Court's Memorandum Opinion & Order granting Thrifty Med's Motion to Dismiss should be affirmed.

## ARGUMENT

### I.    Applicable Standards of Review

The District Court granted Thrifty Med's Motion to Dismiss based on Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) motions challenge either the sufficiency of the pleading itself (facial attacks) or the factual existence of subject matter jurisdiction (factual attacks). *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014) (internal citations omitted). District courts reviewing factual attacks have "broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and [have] the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id*. Plaintiffs bear the burden of establishing the existence of subject matter jurisdiction. *Id*.

On appeal, "Factual findings made by the district court are reviewed for clear error; however, the district court's application of the law to the facts is reviewed de novo." *Id*.

Similarly, dismissals of actions seeking declaratory judgment based on mootness are reviewed *de novo*. *TCI/TKR*, 30 Fed. Appx. at 583; *Southwest*

17

*Williamson County Community Ass'n, Inc. v. Slater*, 243 F.3d 270, 276 (6th Cir.2001) (recognizing that federal appellate courts have a "continuing obligation to assess the justiciability of the claims before us because '[t]he mootness inquiry must be made at every stage of a case'"); *Craft v. United States,* 233 F.3d 358, 373 (6th Cir.2000) ("We review questions of mootness de novo.").

## II.    The District Court Correctly Determined McKee's Claims Against Thrifty Med Are Moot

McKee's Complaint sought relief under the Declaratory Judgment Act ("***DJA***"), 28 U.S.C. § 2201(a), as well as injunctive relief and guidance as to its obligations as a fiduciary under ERISA. [*McKee's Complaint,* R. 1, Page ID # 1-44]. McKee asserted the District Court should address questions concerning ERISA's potential preemption of PC 569 based on Thrifty Med's filing of three administrative complaints with the TDCI against MedImpact. [*Id*.]. PC 569 was substantially amended, the TDCI dismissed Thrifty Med's administrative complaints, and Thrifty Med has not filed any additional administrative complaints or judicial claims under either PC 569 or PC 1070. Examining these facts and circumstances, including also various documents that McKee filed, the District Court correctly concluded this case no longer presents an actual, active case in controversy as required by both the DJA and Article III of the United States Constitution. *See* U.S. Const. art. III; 28 U.S.C. § 2201(a).

For parties to seek declaratory judgment under the DJA, plaintiffs must present district courts with cases presenting actual controversies within their jurisdiction. 28 U.S.C. § 2201(a). The DJA's "actual controversy" requirement is coextensive with Article III's case or controversy requirement. *Fieger v. Michigan Supreme Ct.*, 553 F.3d 955, 961 (6th Cir. 2009). "The case or controversy requirement in Article III of the Constitution determines the power of the federal courts to entertain a suit." *Hanrahan v. Mohr*, 905 F.3d 947, 960 (6th Cir. 2018) (internal citations omitted). Federal courts do not have the power to adjudicate disputes that are moot, and the "mootness inquiry must be made at every stage of a case." *Id*. "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id*. "The test for mootness is 'whether the relief sought would, if granted, make a difference to the legal interests of the parties.'" *Id*. Absent an actual controversy, district courts lack sufficient jurisdiction to grant declaratory relief under both the DJA and Article III. *See Fieger*, 553 F.3d at 961; *see also City of Parma, Ohio v. Cingular Wireless, LLC*, 278 Fed. Appx. 636, 641 (6th Cir. 2008) (holding parties can only satisfy the case in controversy requirement by demonstrating "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"); *TCI/TKR*, 30 Fed. Appx. at 583 (holding a dispute must be "definite and concrete and must allow for specific relief

through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts") (internal citations omitted).

This Court has long held the DJA is "an enabling act, which confers…discretion on the courts rather than an absolute right upon the litigant." *AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004) (internal citations omitted). The Sixth Circuit has encouraged district courts to consider numerous factors when contemplating whether to exercise jurisdiction over a dispute requesting relief under the DJA, including whether the judgment would settle the controversy, whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue, and whether the declaratory remedy is being used merely for the purpose of "procedural fencing". *Id*. at 786. Any of these factors can be dispositive, and district courts must continuously review the facts presented in a dispute to determine if it is moot. *Hanrahan*, 905 F.3d 947 at 960. Indeed, this Court has cautioned district courts against rubber-stamping jurisdiction over DJA cases, stating: "A district court would be wise to decline jurisdiction if a declaratory action involved novel, unsettled, or complex issues of state law; if there were evidence of procedural fencing; or if the sought-after declaration would somehow be frivolous or purely advisory." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 760 (6th Cir. 2014).

As the District Court noted, the burden to establish mootness lies with the

party asserting mootness. *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 558 (6th Cir. 2021); *Adarand Constuctors, Inc. v. Slater*, 528 U.S. 216, 222 (2000). Thrifty Med met its burden and demonstrated the mootness of the claims presented in McKee's Complaint. As noted above, McKee sought review of its obligations under PC 569 as an ERISA plan sponsor in light of administrative complaints filed against its PBM by Thrifty Med. Thrifty Med demonstrated the TDCI dismissed Thrifty Med's complaints in October and November 2021, and Thrifty Med did not file any additional complaints or judicial claims against McKee thereafter. Further, in light of the fact that PC 1070 amended the specific language of PC 569 that McKee presented for review in its Complaint and, thus that language is no longer in effect, Thrifty Med cannot pursue reinstatement or file additional administrative claims under PC 569. While McKee may have wanted the District Court to review the implications of PC 1070, such a review could not take place because (1) that law was not in effect at the time McKee filed its Complaint, (2) Thrifty Med has not filed any administrative or judicial complaints against McKee or its PBM regarding McKee's Plan under PC 1070 and does not have a present plan or intent to do so, and (3) McKee conspicuously did not attempt to amend its Complaint to address the passage of PC 1070 despite the fact it went into effect on January 1, 2023, over a month before the District Court dismissed McKee's moot claims.

The factual and procedural background of this case closely resembles this

21

Court's decision in *TCI/TKR*. There, the Court examined a case in which a cable company sought a declaratory judgment to prevent a subscriber from litigating class action claims in state court regarding the company's practice of passing a tax on to its subscribers. *TCI/TKR*, 30 Fed. Appx. at 582. The cable company filed a motion for summary judgment, arguing federal law preempted Kentucky law and vested exclusive jurisdiction in federal administrative bodies. *Id*. While that motion was pending, the state trial court entered an order involuntarily dismissing the subscriber's claim. *Id*. Reviewing the facts and applicable precedent, this Court noted the subscriber's claims and lawsuit at issue were dismissed without his permission, albeit without prejudice, thus leaving the subscriber with the option of refiling his claims. *Id*. at 583. This Court, however, concluded the dismissal of claims at issue in the declaratory judgment action by a third party judicial or governmental entity rendered the declaratory judgment action moot and removed jurisdiction from the district court. *Id*. at 584-85. The Court highlighted the lack of an "immediate prospect" of renewed litigation by the subscriber and specifically declined to recognize the existence of an actual controversy based on mere speculation over a party's future legal plans before remanding the case with instructions for the district court to dismiss it as moot. *Id*. at 585.

This case is no different. As in *TCI/TKR*, Thrifty Med instituted proceedings with a state governmental agency by filing administrative complaints against

22

McKee's PBM, MedImpact. Thrifty Med's filings prompted McKee to file this action, specifically citing PC 569 and Thrifty Med's administrative complaints against MedImpact. At least one of Thrifty Med's administrative complaints were dismissed after McKee filed suit, and Thrifty Med did not consent to or request those dismissals. Like the subscriber in *TCI/TKR*, Thrifty Med could theoretically file administrative complaints against MedImpact if it refuses to compensate Thrifty Med for services rendered to McKee Plan members in the future, but Thrifty Med has not done so and has no current intent or plan to do so or to otherwise pursue reinstatement to the list of pharmacies authorized by the McKee Plan. Regardless, the District Court examined McKee's "evidence" of Thrifty Med's purported intent to pursue reinstatement and ultimately concluded it did not represent the sort of "immediate prospect" of future litigation or administrative proceedings discussed in *TCI/TKR*.

## III.   The "Voluntary Cessation Doctrine" Did Not Bar the District Court's Dismissal of McKee's Moot Claims

McKee contends the "Voluntary Cessation Doctrine" bars the dismissal of the underlying action and even suggests this Court should look to caselaw outside the Sixth Circuit to find guiding principles. Neither of these assertions has merit.

The "Voluntary Cessation Doctrine" generally holds a party's unilateral promise to cease an allegedly unlawful or improper activity does not, in and of itself,

23

render a declaratory judgment action "moot." *See Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979). This doctrine, however, is not absolute. For instance, a defendant's voluntary conduct may moot a case if "subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur" and if "interim relief or events have completely or irrevocably eradicated the effects" of the issue in question. *Natl. Wildlife Fedn. v. U.S. Army Corps of Engineers*, 404 F. Supp. 2d 1015, 1018 (M.D. Tenn. 2005).

McKee's pleadings below and Appellant Brief repeatedly overlook a very key factor: the "Voluntary Cessation Doctrine" primarily contemplates unilateral action by a party as opposed to intervening events. *See TCI/TKR*, 30 Fed. Appx. at 584 (discussing *United States v. Generix Drug Corporation,* 460 U.S. 453 (1983) and *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283 (1982)). McKee erroneously attempts to cast Thrifty Med's stipulations that it would not pursue reinstatement under PC 569 and has no plans to do so under PC 1070 as Thrifty Med voluntarily ceasing an improper activity. However, as noted above, Thrifty Med did not voluntarily terminate the allegedly improper conduct: pursuing reinstatement via its three administrative complaints. Instead, the TDCI dismissed those filings. Furthermore, the Tennessee legislature substantially and materially amended the law at issue during the pendency of this litigation. These intervening events render the "Voluntary Cessation Doctrine" inapplicable.

24

McKee attempts to further obscure these realities by citing to inapplicable precedent from other circuits, namely the First Circuit's decision in *Adams v. Bowater, Inc.*, 313 F.3d 611 (1st Cir. 2002). Contrary to McKee's assertions, however, that case is neither "instructive" nor "strikingly similar" to the instant case. There, an employer amended a plan to cut back on early retirement benefits offered to a subsidiary's employees. The employees sued and sought a declaration the employer's actions violated ERISA. The employer reversed course and declared it would resume crediting work toward early retirement but refused to enter into a consent decree conceding the amendment was unlawful or promising not to resume its amended policy in the future. Reversing the trial court's dismissal of the case as moot, the First Circuit noted, *inter alia*, concerns relating to the employer's failure to state, on the record, that it had no plans to reintroduce the allegedly illegal policy, which "almost certainly would have persuaded us the quarrel was moot." *Id*. at 614.

*Adams* is readily distinguishable from the facts and procedural history presented in this action. Thrifty Med did not "suddenly have a change of heart" and reverse course with its administrative complaints, the allegedly offensive conduct at issue in McKee's Complaint. Instead, the TDCI dismissed those administrative complaints and terminated any additional proceedings on them. Further, Thrifty Med stipulated it would not pursue reinstatement under the provisions of PC 569, which, again, was the allegedly offensive conduct at issue in McKee's Complaint.

25

Additionally, the law at issue in the case was significantly and materially amended during the course of the litigation. Finally, unlike in *Adams*, Thrifty Med has stated on the record it has no current plans or intent to pursue reinstatement under PC 1070. [*See Transcript of Oral Argument*, R. 70, Page ID # 856]. *Adams* does not apply.

McKee's insistence on focusing on arguments and actions taken in earlier stages of the litigation stands in contravention of established Sixth Circuit precedent. As noted above, this Court has held the proper inquiry is not whether a controversy existed at the time of filing or what actions a litigant took during litigation, but rather whether there is an *existing* case or controversy. *City of Parma, Ohio*, 278 Fed. Appx. 636 at 641 (finding the plaintiff misunderstood the case or controversy requirement by focusing on whether the parties had a dispute at prior stages of litigation); *Golden v. Zwickler,* 394 U.S. 103, 108, (1969) ("The proper inquiry [is] whether a 'controversy' requisite to relief under the Declaratory Judgment Act exist[s] at the time of the hearing [on the claim for declaratory judgment]."); *Midwest Media Property, L.L.C. v. Symmes Tp., Ohio,* 503 F.3d 456, 460 (6th Cir.2007) ("Even when an action presents a live case or controversy at the time of filing, subsequent developments ... may moot the case."); *Schepp v. Fremont County,* 900 F.2d 1448, 1452 (10th Cir.1990) ("In determining whether [the plaintiff] is entitled to declaratory relief, we look beyond the initial controversy which may have existed at one time; rather, we must decide

26

whether ... there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.")

This Court should follow the District Court's lead and reject McKee's efforts to goad this Court into engaging in the sort of rumor and innuendo that apparently drove the First Circuit's decision in *Adams*. McKee repeatedly attempts to provoke suspicion against Thrifty Med based on its owners' lobbying legislators to pass PC 1070 in 2022, Thrifty Med's advertising to residents and workers in the Ooltewah area, and the fact that Thrifty Med estimated it lost a sizeable portion of its customer base and, thus, revenues immediately after McKee directed MedImpact to remove Thrifty Med in July 2019. As noted above, the Bohannons exercised their constitutional right to free speech to rouse support from legislators and ensure the passage of PC 1070, which contained amendments the Bohannons believe benefit patients and, yes, independent pharmacies in Tennessee like Thrifty Med. Julie Bohannon even discouraged national pharmacy associations from attempting to interpret their lobbying efforts as a way to get at or seek revenge against McKee. [*Collective Exhibit 1 to Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss*, R. 62-1, Page ID # 711]. Similarly, McKee fails to acknowledge that Thrifty Med's cited advertising efforts, which make no mention of McKee, are visible to the many residents and workers of the Ooltewah area, not just those that work for McKee. Furthermore, although McKee references Thrifty Med's lost

revenue from McKee Plan members as a reason to believe Thrifty Med will again seek reinstatement, McKee fails to acknowledge the obvious that Thrifty Med's operations have continued for over four years without being part of the McKee Plan.

Throughout the litigation before the District Court and even in its Appellant Brief, McKee repeatedly engages in speculation and tries to use mere conjecture as a weapon. This seems, in part, to stem from McKee's lack of appreciation for how small businesses, especially those close to its Collegedale, Tennessee plant, might decide not to do business with McKee. A cursory review of McKee's aggressive efforts to bring and push this litigation understandably left Thrifty Med with good reasons not to work with McKee again.

This Court should decline to adopt the extensive speculation McKee advances under the banner of the First Circuit's decision in *Adams*, apply the "immediate prospect" test articulated in *TCI/TKR*, and affirm the District Court's dismissal of McKee's claims.

## IV.    A Remand of this Action Would be Ineffectual

The lack of clarity of how a remanded action in this matter would proceed underscores the mootness of the dispute. It would be futile for the District Court to rule on the statutes as referenced in McKee's Complaint in light of the subsequent amendments that PC 1070 have effectuated. No claims exist in this action under PC 1070, nor could they. Thrifty Med has taken no action against McKee or its PBM

pursuant to PC 1070. Moreover, McKee could not obtain complete relief in this action pursuant to PC 1070 because that statute contains certain new restrictions applicable to PBMs alone, and no PBM is even a party to this case. McKee would not have standing to raise a claim solely involving the PBM.  The previous version of Tennessee Code Annotated § 56-7-3120 referred to PBMs and "covered entities," but the new section regarding PBMs applies only to PBMs.  *See* Tenn. Code Ann. § 56-7-3121. Thus, the District Court cannot grant effectual relief to McKee on the specific claims presented in McKee's Complaint.[4]

## **CONCLUSION**

The District Court correctly concluded no justiciable case or controversy exists between Thrifty Med and McKee. The Court correctly took into account the dismissal of Thrifty Med's previous administrative complaints, the lack of any pending counterclaims or other claims (administrative or judicial) by Thrifty Med, the material and significant changes to the statutory law at issue, the filings and submissions of the parties, the particular claims before or not before the Court, and Thrifty Med's stipulations and representations through filed declarations and during

---

[4] To the extent McKee or its allies in the PBM industry seek to challenge PC 1070 or, more specifically, prevent unaffiliated pharmacies from participating in McKee's Plan, their fight is either with the State of Tennessee or pharmacies actually seeking inclusion in the Plan. McKee's claims against Thrifty Med as presented in McKee's Complaint are moot.

the hearing on the parties' pending motions. It did not shift the burden of proof to McKee, nor did it solely rely on representations made by counsel during oral argument. Instead, it considered the totality of the circumstances as described above and concluded an active case in controversy no longer exists between Thrifty Med and McKee. The District Court did not clearly err with its findings and conclusions, and its judgment should not be disturbed.

Thrifty Med respectfully requests this Court affirm the District Court's grant of Thrifty Med's Motion to Dismiss.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

By: s/Russell W. Gray
Russell W. Gray, TN BPR # 016120
Derek W. Mullins, TN BPR # 036135
Ryan A. Freeman, TN Bar # 033299
633 Chestnut Street, Suite 1900
Chattanooga, Tennessee 37450
Tel: (423) 756-2010
rgray@bakerdonelson.com
dmullins@bakerdonelson.com
rfreeman@bakerdonelson.com

*Counsel for Defendant BFP Inc.
d/b/a Thrifty MedPlus Pharmacy*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

1.    This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,648 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO in 14-point Times New Roman type style.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

By: s/Russell W. Gray
    Russell W. Gray, TN BPR # 016120
    Derek W. Mullins, TN BPR # 036135
    Ryan A. Freeman, TN Bar # 033299

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 23, 2023, a copy of the foregoing Brief of Appellee was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

By: s/Russell W. Gray
    Russell W. Gray, TN BPR # 016120
    Derek W. Mullins, TN BPR # 036135
    Ryan A. Freeman, TN Bar # 033299
    633 Chestnut Street, Suite 1900
    Chattanooga, Tennessee 37450
    Tel: (423) 756-2010
    rgray@bakerdonelson.com
    dmullins@bakerdonelson.com
    rfreeman@bakerdonelson.com

*Counsel for Defendant BFP Inc.
  d/b/a Thrifty MedPlus Pharmacy*

**DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS**
**6 Cir. R. 28(b)(1)(A)(i)**
**Case No. 1:21-cv-00279 (E.D. Tenn.)**

| Record Entry | Description | Date Filed | Page ID Range |
|---|---|---|---|
| 1 | Complaint for Declaratory Judgment and Injunctive or Otherwise Appropriate Equitable Relief | 11/15/2021 | Page ID # 1-44 |
| 12 | Thrifty Med's Answer to Complaint by McKee Foods | 12/22/2021 | Page ID # 60-72 |
| 16 | Federal Rule of Civil Procedure 26(f) Discovery Plan | 1/14/2022 | Page ID # 79-81 |
| 27 | Intervenor State of Tennessee's Motion to Dismiss | 3/22/2022 | Page ID # 104-107 |
| 33 | Thrifty Med's Reply to the State of Tennessee's Motion to Dismiss | 4/19/2022 | Page ID # 156-163 |
| 33-1 | A - Declaration of Greg Bohannon | 4/19/2022 | Page ID # 162-163 |
| 35 | Plaintiff's Motion for Summary Judgment | 5/23/2022 | Page ID # 173-253 |
| 35-1 | 1 - Declaration of Jennifer Johnson | 5/23/2022 | Page ID # 176-189 |
| 35-2 | 2 - Declaration of Angela Sharps | 5/23/2022 | Page ID # 190-253 |
| 36 | Brief in Support of Plaintiff's Motion for Summary Judgment | 5/23/2022 | Page ID # 254-324 |
| 36-4 | Bulletin 21-01 | 5/23/2022 | Page ID # 298-300 |

| Record Entry | Description | Date Filed | Page ID Range |
|---|---|---|---|
| 37 | Thrifty Med Plus Pharmacy's Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Summary Judgment | 5/24/2022 | Page ID # 325-327 |
| 38 | Defendant Thrifty Med Plus Pharmacy's Memorandum of Law in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Summary Judgment | 5/24/2022 | Page ID # 328-355 |
| 38-2 | 2 - Declaration and Stipulation of BFP Inc d/b/a Thrifty Med Plus Pharmacy | 5/24/2022 | Page ID # 347-355 |
| 39 | Defendant Thrifty Med Plus Pharmacy's Supplement to its Memorandum in Further Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Summary Judgment and Notice of Filing Additional Exhibit | 5/31/2022 | Page ID # 356-365 |
| 44 | Defendant Thrifty Med Plus Pharmacy's Response in Opposition to Plaintiff's Motion for Summary Judgment | 6/27/2022 | Page ID # 385-413 |
| 44-1 | 1 - Declaration of Greg Bohannon | 6/27/2022 | Page ID # 409-413 |
| 45 | Plaintiff's Brief in Opposition to Defendant Thrifty Med's Motion to Dismiss or, in the Alternative, for Summary Judgment | 6/28/2022 | Page ID # 414-460 |
| 45-2 | Declaration of Kevin Spicer | 6/28/2022 | Page ID # 440-460 |

| Record Entry | Description | Date Filed | Page ID Range |
|---|---|---|---|
| 46 | Defendant Thrifty Med Plus Pharmacy's Reply in Additional Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Summary Judgment | 7/5/2022 | Page ID # 461-479 |
| 46-1 | Exhibit 1 to Thrifty Med's Reply in Additional Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Summary Judgment | 7/5/2022 | Page ID # 473-479 |
| 53 | Plaintiff's Brief in Opposition to Defendant's Motion [sic] Stay Discovery | 8/15/2022 | Page ID # 535-578 |
| 53-1 | 1 - Thrifty Med's Response to Plaintiff's First Requests for Admission | 8/15/2022 | Page ID # 550-561 |
| 62 | Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss | 11/18/2022 | Page ID # 646-717 |
| 62-1 | Collective Exhibit 1 to Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss | 11/18/2022 | Page ID # 651-717 |
| 67 | Memorandum Order & Opinion | 2/3/2023 | Page ID # 794-802 |
| 68 | Notice of Appeal | 3/1/2023 | Page ID # 803-804 |
| 70 | Transcript of Oral Argument | 3/6/2023 | Page ID # 808-864 |